## Appeal of William L. Lance.

1. To convert a deed, executed prior to the Act of June 8th, 1881, absolute on its face, into a mortgage by parol testimony, such testimony must be clear and specific, of a character such as will leave in the mind of the Chancellor no hesitation or doubt; and failing in this, the effort to impeach the legal character of the deed must be regarded as abortive.

2. A mortgage is essentially a pledge or security, and it is distinguishable from a trust in this only, that the property described in it is to revert to the mortgagor on the discharge of the obligation for the performance of which it is pledged.

3. Where the intent is merely to pass the property as a pledge for the payment of a debt, the transaction may be regarded as a mortgage; but not so when the grantee has the power to sell the premises, though the proceeds are to be applied on the indebtedness of the grantor.

4. Where a mortgagor or trustee is liable to account to three jointly and not to either severally, a bill in equity for an account filed by one alone should be dismissed for want of proper parties.

March 25th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

APPEAL from the Court of Common Pleas No. 1, of *Philadelphia county :* In Equity ; Of July Term, 1885, No. 167.

This was an appeal by William L. Lance, Jr., from a decree of said court dismissing his bill, wherein the Lehigh and Wilkesbarre Coal Company and the Receivers thereof and Samuel Bonnell, Jr., were defendants.

The plaintiff's bill alleged in substance—

1. That the plaintiff has received permission from the Circuit Court of the United States, for the western district of. Pennsylvania, to bring this suit against the Receivers of the Lehigh and Wilkesbarre Coal Company.

2. That by virtue of divers conveyances the plaintiff was seized in his demesne as of fee, of a valuable tract of coal land in Plymouth township, Luzerne county, Pennsylvania, describing it by metes and bounds.

3. That for the purpose of obtaining the large capital necessary to develop the land, and to sink shafts, erect a breaker, and machinery, and buildings, and for the purpose of mining coal, the plaintiff conveyed the land to Payne Pettibone under an agreement that Pettibone should make the advances, hold the title to the land as security for re-payment, and upon re-payment, that Pettibone should re-convey to the plaintiff, his heirs and assigns.

4. That Pettibone did make advances, and that disputes having arisen between Pettibone and plaintiff, it was agreed between Pettibone, the defendant Bonnell, Jr., and the plaintiff, to compromise their differences, as follows:

5. Defendant, Samuel Bonnell, Jr., was a friend of plaintiff and of his father, and had been selling coal on commission for the plaintiff.

6. That in December, A. D. 1870, it was agreed between Pettibone, Samuel Bonnell, Jr., and the plaintiff, that Pettibone should have the property sold at sheriff's sale, and buy it in. That Samuel Bonnell, Jr. would pay Payne Pettibone one hundred and sixty-two thousand dollars ($162,000) claimed by Pettibone to be due him, and for which he held the land as security, and that upon such payment Payne Pettibone would convey the tract of land to Samuel Bonnell, Jr. And that it was further agreed between Bonnell, Jr. and the plaintiff, that he, said Bonnell, Jr., should accept drafts to be drawn upon him which the plaintiff agreed to get discounted and renewed from time to time, until by sale of the breaker, or the property itself, said drafts should be paid, the proceeds to be applied to pay the claim of Pettibone, and that in the meantime Bonnell should hold the land as security for the money he should advance to pay Pettibone, or to further develop the property, . . . . . and that Bonnell agreed to re-convey the land, upon re-payment of the moneys advanced, to the plaintiff, his heirs or assigns.

7. That the agreement was consummated. That a sheriff's sale was made, and on January 11th, 1871, the sheriff conveyed to Payne Pettibone, who, on January 20th, 1871, conveyed the land to Samuel Bonnell, Jr.

8. That on June 22d, 1870, the plaintiff purchased of Aaron Brown an interest in the same land belonging to Brown. That Bonnell took a conveyance of the land as security for money to be advanced, and that the money so advanced has been fully repaid.

9. And the plaintiff avers that the title to the land on January 20th, 1871, vested in the defendant, Samuel Bonnell, Jr., as mortgagee and as collateral security, for the repayment to him by the plaintiff, or out of the rents, issues and profits of

the sums of money which he had advanced, or became responsible for, or might so advance for the redemption of the land from the claim of Payne Pettibone, and its further development, and upon such repayment to immediately re-convey the same to the plaintiff, his heirs or assigns.

10. That the advances made by Bonnell were inconsiderable, but the larger part of the money was raised by plaintiff upon acceptances by defendant of drafts of William L. Lance, negotiated by plaintiff, against which plaintiff shipped coal mined from the land. Subsequently on July 1st, 1871, plaintiff negotiated a sale to the Wilkesbarre Coal and Iron Company, of the breaker, improvements and personal property for $157,000; and after this there was due to Samuel Bonnell, Jr. but a comparatively small sum of money.

11. The coal under the land was leased by Bonnell, Jr. and plaintiff, to the Wilkesbarre Coal and Iron Company. That the plaintiff delivered possession of the coal but still retains possession of the surface of the land.

12. That the Wilkesbarre Coal and Iron Company, on January 20th, 1874, was merged with the Honeybrook Coal Company, under the name of the Lehigh and Wilkesbarre Coal Company.

13. That the said Wilkesbarre Coal and Iron Company, and the defendant, the Lehigh and Wilkesbarre Coal Company, had at all times full notice and knowledge of the fact that said defendant, Samuel Bonnell, Jr., held the premises, as mortgagee, as collateral security, merely for money advanced, under agreement to re-convey to the plaintiff, his heirs or assigns, upon repayment thereof.

14. That Samuel Bonnell, Jr., on February 29th, A. D. 1876, in fraud of the rights of the plaintiff, conveyed the land to the Lehigh and Wilkesbarre Coal Company.

XV. The plaintiff avers that the defendant has been fully paid with interest.

The plaintiff prays:

1. That an account be stated of all the moneys received by the defendant, Bonnell, from the plaintiff, together with the rents, issues and profits arising from said tract of land and received by him, as well as of the several sums of money advanced by him to the plaintiff, or paid by him for his account, and that it be ordered and decreed that the balance due shall be paid by one to the other.

2. That it be ordered and decided, upon payment by the plaintiff to the defendant, Bonnell, Jr., of the balance, if any, which may appear to be due by said plaintiff to said defendant, or if no such balance appears, then immediately that said defendant the Lehigh and Wilkesbarre Coal Company,

and the Receivers thereof if said Receivers shall remain in possession shall by good and sufficient deed or other assurance convey to said plaintiff, his heirs or assigns, in fee simple all and singular said premises and tract of land in the second section of the bill in equity fully described.

The answer of the Receivers:

1. Admits that they were appointed Receivers, and that they are advised, that except as such officers and Receivers they have no interest.

2. That from the time of their appointment they have been in possession, *inter alia*, of the tract of land and colliery described in the bill. During all this time no claim was made by plaintiff or notice given of any such title as he now sets up.

The answer of the Lehigh and Wilkesbarre Coal Company, avers want of knowledge of the truth of the second, third and fourth sections of the bill, but is informed and believes that the sixth and seventh sections are utterly false and untrue. The sheriff's sale of the real estate on January 7th, 1871, was not a friendly sale by arrangement, but was entirely adverse and hostile. No arrangement respecting it was made with the plaintiff. . . . . .

2. The conveyance by Pettibone to Bonnell, was not made in the interest of the plaintiff, Bonnell did not take the bill in trust or as collateral security, or under any agreement with the plaintiff whatever, nor did he sign any deed of trust, etc., and as more than five years have elapsed since such alleged contract was made or equity or trust accrued, they claim the benefit from such lapse of time.

3. The defendant the Lehigh and Wilkesbarre Coal Company says: It is not true that the plaintiff negotiated a sale to the Wilkesbarre Coal and Iron Company on July 1st, 1871, of the breaker, improvements and machinery, but that said Bonnell, Jr., was or pretended to be possessed as of his own absolute property, and was or pretended to be in actual possession of the real estate purchased by him from Payne Pettibone, and of the personal property on the same, and the said Lehigh and Wilkesbarre Coal Company, believing that the said Samuel Bonnell, Jr. was so possessed and entitled, and that the said real and personal property were free from all trusts and incumbrances agreed with said Samuel Bonnell, Jr. for the purchase of the breaker, with the improvements, etc., and for a lease of the coal under the tract, and neither the Wilkesbarre Coal and Iron Company, nor Lehigh and Wilkesbarre Coal Company, had notice nor knowledge of any right of the plaintiff in the premises, . . . . . nor had it notice nor knowledge that Samuel Bonnell, Jr. held the premises as mort-

gagee or as collateral security, or under agreement to reconvey the same to the plaintiff, his heirs or assigns upon repayment of any indebtedness.

4. And they further say that the Lehigh and Wilkesbarré Coal Company purchased the reversion of the said Samuel Bonnell, Jr., in the said tract of land, without notice of any claims or alleged claim upon the part of the plaintiff in the premises, and believing that the defendant, Samuel Bonnell, Jr., was the owner of the legal and equitable title to said property, and the Lehigh and Wilkesbarre Coal Company paid the consideration money mentioned in said deed without any notice of the trusts and purposes set up in said bill, etc.

5. Admits that Receivers were appointed, but denies that any notice was received by them of the claim that the title was held by Samuel Bonnell, Jr., in trust.

The answer of Samuel Bonnell, Jr., says:

1. I have no knowledge of the plaintiff's ownership in fee.

2. I have no knowledge concerning the several transactions alleged in paragraphs 3 and 4 of plaintiff's bill. No knowledge of conveyances by Pettibone.

3. I did not make any agreement with plaintiff and Pettibone, or any other agreement to compromise certain differences.

4. I was a personal friend of plaintiff and of his father. The plaintiff never consigned any coal to me, in New York or elsewhere.

5. I deny that about December, 1870, or at any time, I entered into an agreement as alleged in paragraph 6 of plaintiff's bill.

6. I deny that agreement referred to in paragraph 7 was ever made or consummated; the rest of the statements are true.

7. Denies paragraph 8 of bill.

8. I deny that the title to the said property was vested in me as mortgagee, or as collateral security for the repayment to me by the plaintiff of any sum of money alleged to have been advanced. . . . . . Such statements are false and untrue. I took the said conveyance in my own absolute and individual right, the plaintiff having no right, title or interest whatsoever therein.

9 and 10. Denies 9 and 10 of bill.

11. Asserts that lease to Lehigh and Wilksbarre Coal and Iron Company was made in his own right.

12. I deny that plaintiff dealt with the coal companies in these transactions; and, also, I deny that I gave the said companies or either of them any notice that I held the premises

as a mortgage, or as collateral security, etc., etc. Such allegations are utterly false and untrue.

13. Admits sale of land February 29th, 1876, to Lehigh and Wilkesbarre Coal Company. I deny that any agreement whatever existed between the plaintiff and me concerning said tract of land. The title to said tract of land was properly vested in me as sole owner, and as such I sold the same to the Lehigh and Wilkesbarre Coal Company, having no notice whatever of the plaintiff's pretended claim and interest.

14. I deny, as I have before denied, that I advanced any money to the plaintiff on account of said tract of land, etc.

The testimony is very voluminous, the documentary evidence alone being more than 150 pages, the plaintiff's testimony 322 printed pages, and the defendant's 370 pages.

To summarize the contention between the parties, the plaintiff claims that although the Lehigh and Wilkesbarre Coal Company are vested with a title to the land, which upon its face and by all that appears of record is perfectly valid, that he is entitled to an equity of redemption because Samuel Bonnell, Jr., their grantor, was a mortgagee, and that they had notice of this.

The cause was referred to Charles B. McMichael, Esq., as Master, who, after reciting the contents of the bill and answers as above, reported the facts and his conclusions of law as follows :

1. That the plaintiff's bill should be dismissed for want of proper parties, because if there is any equity in the plaintiff's case William L. Lance, Sr., and Walter W. Lance are mutually interested with William L. Lance, Jr., in the re-conveyance of the land by the Lehigh and Wilkesbarre Coal Company, and in the account to be stated by Samuel Bonnell, Jr., and should be joined as parties.

2. The allegation made by the plaintiff in paragraph 6 of his bill that Pettibone, Samuel Bonnell, Jr., and the plaintiff agreed that Payne Pettibone should cause or procure the premises to be sold at sheriff's sale, is not sustained by the evidence, but on the contrary the Master reports that the sheriff's sale of January, A. D. 1871, was adverse and hostile to the plaintiff and the other Lances.

3. That there was no agreement made by Samuel Bonnell, Jr., to re-convey the land to William L. Lance, Jr., the plaintiff, his heirs or assigns, or to any one else for him, either in writing, by parol, or necessarily implied from the surrounding circumstances.

4. That Samuel Bonnell, Jr., however else he may have held the land, did not hold it as mortgage.

5. That William L. Lance, Jr., is not entitled to redeem the

lands, nor is any equity of redemption vested in him in his own right, or as trustee for any one else, nor is any equity of redemption vested in any one else for him.

6. The Lehigh and Wilkesbàrre Coal Company were purchasers, *bona fide*, and for value without notice of any preexisting equities.

7. No trust can be enforced against Samuel Bonnell, Jr.

1. Because Exhibit 81 is not a declaration of trust.

"*Exhibit* 81."

WILKESBARRE, *January* 23*d*, 1871.

S. T. McCLINTOCK:

· *Dear Sir:*—I have purchased the Lance coal property in Plymouth of P. Pettibone, for the consideration of $162,500, subject to the mortgages of Mrs. Rickards and Mrs. Pringle, as of the 7th inst.

· I have done this to secure my debt against the Lances. My voluntary purpose and intention is, that if I can sell or dispose of the property for more than the said purchase money and mortgages, the amount of the indebtedness of the said Lances to me, with interest as paid by me, and all expenses, liens and charges, and reasonable compensation for my cost, expenses, and time and trouble, in and about said business, that I will give and appropriate the balance for which I may dispose of the said property to the use and benefit of such of the Lance family as I may be satisfied should in equity be entitled thereto ; and if I do not signify my election of the party entitled to receive the same, then to such one as William L. Lance, Jr., and Walter W. Lance shall designate, first securing to myself and deducting from amount of sale or disposition of property I may make, the said purchase money paid or agreed to be paid by me, my debt, all interest, cost, expenses and reasonable compensation.    Yours respectfully,

SAMUEL BONNELL, JR.

2. No resulting trust, or trust *ex maleficio* is raised by the transaction.

· The Master therefore reports that the plaintiff's bill should be dismissed.

The plaintiff filed exceptions to all of the Master's findings of fact and conclusions of law, which were dismissed by the court, ALLISON, P. J.   The report of the Master was confirmed and the decree recommended, viz: the dismissal of the plaintiff's bill, was entered.   Whereupon the plaintiff took this appeal, filing the following assignments of error :

1. The court erred in not finding that the deed to Payne Pettibone was a mortgage.

2. The court erred in not finding that the plaintiff was en-

titled to recover, or if an amendment was necessary, to allow other parties to be joined.

3. The court erred in not finding that the deeds to Bonnell were a security for a debt and a mortgage.

4. The court erred in not finding that the conveyance to Bonnell was in pursuance of an agreement to hold the property as security for his debt and such advances as he might make, and that upon re-payment of the same he agreed to re-convey the property to the plaintiff.

5. The court erred in finding that the sheriff sale of January 7th, 1871, was hostile and adverse.

6. The Master and court erred in relying upon conversation of witnesses in absence of the plaintiff, and upon the opinions of counsel and their advice to Pettebone, Bonnell and Parrish in absence of plaintiff.

7. The Master and court erred in finding any agreement other than the one alleged and proved by the plaintiff.

8. The court erred in their construction of the effect to be given to letter of S. Bonnell, Jr.　Exhibit 81.

9. The court erred in not permitting the plaintiff to amend his bill of complaint by adding the following at section 16, viz.:

"SECTION 16. That on the 22d day of August, A. D. 1879, the defendant, Samuel Bonnell, Jr., brought an action against the plaintiff in Court of Common Pleas No. 2, of Philadelphia County, of June term, 1879, No. 1072, to recover upon a certain draft drawn by W. L. Lance upon the plaintiff and accepted by him, for the sum of three thousand and five hundred dollars, dated May 14th, 1873, and payable at four months after date thereof.

"That the only defence made by the plaintiff herein as the defendant in said action was, that the said defendant, Samuel Bonnell, Jr., who was the plaintiff therein, held the said lands described in sections 2 and 7 of the bill herein filed, as mortgagee, and upon an agreement to re-convey the same to the plaintiff upon re-payment to him of the debt thereby secured as set forth in said bill; that it was agreed that the said draft should be charged in the account of the moneys for which he held said land as security, and in mortgage as aforesaid, and that the same was so charged; and that said draft was fully paid by the moneys received by said defendant, Samuel Bonnell, Jr., from the sale of the coal breaker upon said land, and the other rents, issues and proceeds thereof, as in said bill set forth.

"That said action was so proceeded in that afterwards, to wit, on the 21st day of October, A. D. 1882, the said issue was tried before a jury and a verdict found therein for the defend-

ant therein, to wit, the plaintiff here, and upon which judgment was duly entered in his favor on the 28th October, A. D. 1882.

"And the plaintiff says that the issue so determined in his favor in said suit at law is upon the same and identical claim and issue as set up in bill of complaint against Samuel Bonnell, Jr., and not another or different issue ; that he is advised by counsel, believes, and therefore avers that said judgment as aforesaid is final and conclusive upon the parties thereto, and that by reason thereof the plaintiff herein is entitled to a decree in this cause ; that the defendant, Samuel Bonnell, Jr., held the title to the said land mentioned and described in mortgage, and upon agreement to re-convey the same to the plaintiff, his heirs or assigns, upon re-payment of the debt and advances secured thereby, as in said bill is more fully and at length set forth.

"And in discharging the motion made November 15th, 1882, for leave to withdraw the replication and amend the bill as prayed for by adding the above, which said motion was discharged November 25th, 1882."

10. The court erred in not finding that the judgment referred to the preceding assignment of error, and which said judgment was offered in evidence before Master by leave of court, was final and conclusive upon the parties thereto.

11. The court erred in finding that the Lehigh and Wilkesbarre Coal Company were purchasers of the property in 1876 without notice of the plaintiff's claim.

12. The court erred in dismissing the complainant's bill.

13. The court erred in not granting the prayer and relief prayed for in the bill.

*David C. Harrington* and *F. Carroll Brewster*, (*Silas W. Pettit* with them) for appellant.—1. The deed to Pettibone was taken as a security for the payment of money. It is a mortgage : Houckers *v.* Merkey, 6 Out., 426 ; Harper's Appeal, 14 P. F. S., 322 ; Spering's Appeal, 10 Id., 210 ; Maffit's Adm'r *v.* Rynd, 19 Id., 387 ; Houser *v.* Lamont, 5 Id., 317 ; Bispham's Equity, 154.

2. The power of the court to direct the amendment of the bill, if they think it necessary for the protection of any interest by adding thereto their names, is undoubted, not only under the rule, but also under the statute : Act 4th May, 1864, § 2, P. L., 775 ; Pur. Dig., 601, § 71; Act 4th May, 1852, § 2, P. L., 574 ; Pur. Dig., 70, § 3 ; Dougherty & Pott's Appeal, 1 W. N. C., 593 ; Hiller *v.* Pollock, 39 Leg. Int., 237 ; Patton *v.* P. C. & St. L. R. R. Co., Id., 248.

The request for amendment was made in the court below, and is renewed here if the court think it necessary to amend.

3. From a resumé of the law upon this subject, as drawn from all the cases, the test, whether a deed is or is not a mortgage, is the existence or non-existence of a debt. If after the transaction no debt remain, there is no mortgage. When the relation of debtor and creditor is created by the transaction, or previously existed, and by express language or fair implication continues, and the possession is retained by the vendor, and the value of the property is greatly in excess of the consideration paid, the transaction is always held to be a mortgage: Sweetzer's Appeal, 21 P. F. S., 268; Danzeizen's Appeal, 23 Id., 65; Boynton v. Housler, 23 Id., 453; Heath's Appeal, 4 Out., 1; Bispham's Equity, 154; Colwell v. Woods, 3 Watts, 197; Conway's Executors v. Alexander, 7 Cranch, 218; Rhines v. Baird, 5 Wr., 264; Russel's Appeal, 3 Har., 322; Wilson v. Shoenberger, 7 Casey, 299; Houncker v. Merkey, 6 Out., 462; Hartley's Appeal, 7 Id., 23; Davis v. Stonestreet, 4 Ind., 101; Jones on Mortgages, §§ 275 and 329; Stoddard v. Whiting, 46 N. Y., 627; Rhines v. Baird, 5 Wr., 263.

The " clear, precise and satisfactory " proof, or " full, satisfactory and indubitable " evidence required to prove a deed a mortgage, does not mean that absolute certainty is required, or that the evidence should lead to a certain conclusion, for absolute certainty is out of the question where facts are to be found from oral testimony and circumstances. The law does not require proof so convincing as to leave no doubt, or that the evidence should be uncontradicted; it is enough if it satisfy an unprejudiced mind beyond reasonable doubt: Spencer v. Colt, 8 Norris, 314; Ott v. Oyer, 10 Out., 6–17; Hartley's Appeal, 7 Id., 23.

The plaintiff should have been permitted to amend his bill as shown in his ninth assignment of error. This would have shown (1) that Bonnell held as mortgagee; (2) that the coal company took title from him with notice of that fact.

To sustain the first allegation, any evidence is admissible which is competent as against Bonnell alone, and if his contention is sustained, the plaintiff is entitled to his decree against Bonnell for an account, even should he fail to sustain his second allegation, and obtain a reconveyance of the land.

The record, as offered, was not only admissible against Bonnell, but was, as to him, final and conclusive: Frauenthal's Appeal, 4 Out., 290; Gordineer's Appeal, 8 Nor., 528; Marsh v. Pier, 4 Rawle, 273; Finley v. Hanbest, 6 Casey, 190.

A record, where evidence at all, is always final and conclu-

sive, except where otherwise provided by statute : Miller *v.* White, 50 N. Y., 144.

It is not necessary that notice be given by the party or his agent. It may come *aliunde* : Butcher *v.* Yocum, 11 P. F. S., 168; Mulliken *v.* Graham, 22 Sm., 484; Kelsey *v.* Bank, 19 P. F. S., 430.

Possession is notice; and whatever puts a party upon inquiry is equivalent to notice. See Leach *v.* Ausbacker, 5 P. F. S., 89 ; Jamison *v.* Dimock, 14 Norris, 65 ; Hood *v.* Fahnstock, 1 Barr, 474 ; Hottenstein *v.* Lerch, 8 Out., 454 ; Woods *v.* Farmere, 7 Watts, 282, 284; Rowe *v.* Ream, 9 Out., 543.

*Samuel Dickson* (*R. C. Dale* with him), for the Lehigh and Wilkesbarre Coal Co.—1. The evidence in the case shows that the proceedings which culminated in the sheriff's sale of January 7th, 1871, were entirely adverse, and there is nothing in the case to change the apparent absolute title of Mr. Bonnell into a defeasible title, of which he was the mortgagee, and W. L. Lance, Jr., the plaintiff, or any other member of the Lance family, was the mortgagor.

(*a*) The proof of the alleged agreement to reconvey does not come up to the measure of proof required by the cases : Plumer *v.* Guthrie, 26 Sm., 441 ; McGarrity *v.* McGarrity, 13 Id., 38; Nixon's Appeal, Id., 279 ; Lingenfelder *v.* Richey, 12 Id., 123 ; Kistler's Appeal, 23 Id., 393 ; Salter *v.* Bird, 7 Out., 436 ; Hollinshead's Appeal, Id., 158; Hartley's Appeal, Id., 23 ; Logue's Appeal, 8 Out., 136 ; Dyer's Appeal, 11 Id., 446.

(*b*) A promise to reconvey to a defendant in an execution is insufficient to establish a trust in his favor : Rhines v. Baird, 5 Wr., 256; Barnet *v.* Dougherty, 8 Casey, 371; Kellum *v.* Smith, 9 Id., 158 ; Kistler's Appeal, 23 Sm., 393 ; Welford *v.* Herrington, 5 Norris, 39 ; O'Harra *v.* Dilworth, 22 Sm., 397 ; Williard *v.* Williard, 6 Id., 117.

(*c*) The promise to reconvey if made at all and clearly established, would only be good as to an individual half of the property, which was all the interest any of the Lance family had in the tract, and that interest was subject to heavy incumbrances.

(*d*) Bonnell cannot be held to be the mortgagee of a tract, and W. L. Lance, Jr., the mortgagor, unless W. L. Lance, Jr. agreed to pay to Bonnell the amount advanced by him within some specified time. An agreement to pay within a fixed time is essential : Harper's Appeal, 14 Sm., 315.

This distinguishes the case before the court from Heath's Appeal, 11 W. N. C., 317, where there was an obligation to redeem the land in ninety days.

(e) The obligation upon the part of the alleged mortgagor to redeem must be a continuing obligation: Todd v. Campbell, 8 Casey, 250; DeFrance v. DeFrance, 10 Id., 385. See also R. R. Co. v. Casey, 29 Sm., 84; Spering's Appeal, 10 Id., 210; Carhart's Appeal, 28 Id., 100.

2. Even though, as between Bonnell and the plaintiff, the relation was that of mortgagor and mortgagee, the Lehigh and Wilkesbarre Coal Company is a purchaser for value without notice, and as such is entitled to the protection of a chancellor.

The notice which charges must be clear, precise and detailed: Peebles v. Reading, 8 S. & R., 484; Kerns v. Swope, 2 Watts, 78; Ripple v. Ripple, 1 Rawle, 386; Boggs v. Varner, 6 W. & S., 469.

Even if Charles Parrish should be regarded as having notice, the Lehigh and Wilkesbarre Coal Company is only bound by such knowledge as he acquired in the course of his agency: Houseman v. Building Asso., 31 Sm., 256; Hood v. Fahnestock, 8 Watts, 489; Bracken v. Miller, 4 W. & S., 110; Martin v. Jackson, 3 Casey, 508; Wilson v. McCullough, 11 Harris, 440; Notes to LeNeve v. LeNeve, 2 L. C. in Equity, 169; McCormick v. Wheeler, 36 Ill., 114.

*George R. Van Dusen* and *William Ernst*, for Samuel Bonnell, Jr.

Mr. Justice GORDON delivered the opinion of the court, May 24th, 1886.

We agree with the Master and the court below that the attempt to change the *prima facie* character of the deed of Pettibone to Bonnell, and by oral testimony convert it into a mortgage, has not been successful. It may be admitted that there are many things apparent on a critical examination of the evidence which would seem to favor the contention of the appellant, but when the whole body thereof is considered together, such a conclusion is seen to be illusory. To convert a deed, absolute on its face, into a mortgage by parol testimony, such testimony must be clear and specific, of a character such as will leave in the mind of a chancellor no hesitation or doubt, and failing this, the effort to impeach the legal character of the deed must be regarded as abortive. A mortgage is essentially a pledge or security, and it is distinguishable from a trust in this only, that the property described in it is to revert to the mortgagor on the discharge of the obligation for the performance of which it was pledged: Allegheny Railroad & Coal Co. v. Casey, 29 P. F. S., 84. So we have it said in Danzeizen's Appeal, 23 Id., 65, that where the intent is merely

to pass the property as a pledge for the payment of a debt, the transaction may be regarded as a mortgage, but not so when the grantee has the power to sell the premises, though the proceeds are to be applied on the indebtedness of the grantor. In this, of course, we say nothing as to the various methods which may be adopted for the purpose of foreclosure or extinguishment of the mortgagor's equity of redemption. This may be accomplished by a bill in equity, by a *scire facias*, or by agreement of the parties, as that the mortgagee shall have the power to sell on default of payment, or performance of the obligation, whatever that may be, which the mortgage was given to secure.

This, however, affects not the character of the instrument itself, for if it be not a vadium or pledge, whether living or dead, it is not a mortgage. It must be accompanied with a defeasance, otherwise it is a deed absolute or in trust. If, therefore, the alleged oral defeasance has not been proved, if it appears that Bonnell was not merely to hold the land conveyed as a pledge, but was to have the power to sell it for the purpose of paying the indebtedness of Lance to him, and the liens against the property, it is clear that the *prima facie* character of the deed is unaffected, and the trust, if any, attaches to the proceeds. It would also follow, that if Bonnell had thus, in himself, the power to sell, his vendee, the Lehigh and Wilkesbarre Coal Company, must be regarded as vested with an absolute estate, and cannot be obliged to account. But that he had such power the evidence clearly demonstrates. The letter from Bonnell to Lance, previous to the conveyance from Pettebone, setting forth his, Pettibone's proposition, and inquiring whether, in case of his purchase of the property, he could sell it for a sum not less than $300,000, of itself shows what Bonnell's intention was in the acquisition of the land in controversy, and this same intention is also expressed in his letter to Mr. McClintock. But that the design of all the parties was that Bonnell should carry the property on his own credit until he could dispose of it by an advantageous sale, is clear from their subsequent conduct. The proposition to the president of the Wilkesbarre Coal and Iron Company, as contained in the letter of Bonnell and Lance, dated June 23d, 1871, and the consummation of that proposition by the conveyance to the said company of the breaker, houses, improvements, and personal property, together with a lease of the coal, executed by Bonnell and witnessed by W. W. and W. L. Lance, can be explained on no other hypothesis than that above stated. Beside this, we have from the testimony of W. W. Lance the fact that the deeds for the surface lots, sold by him, were sent to Bonnell

for execution, so that, without reference to the disposition of the money derived from such sales, it is obvious that he was regarded as the owner of the fee, and as the only one who had power to convey it.   Moreover, his power to mortgage the property to Pettibone for the purchase money has not been questioned; on the other hand it seems to have been recognized by all the parties as the exercise of a legitimate power on part of Bonnell, and if so, he must have been regarded as something more than a mere mortgagee.   If, then, this man had the power to sell the improvements, lease the coal, the equivalent of a sale, to execute deeds for the surface land, and to mortgage the estate, we cannot understand by what process of reasoning he could be deprived of the power to sell the reversion.   Under such circumstances as these the question of notice is of no importance, for if the power to convey was vested in Bonnell, notice to his vendee would not revoke that power; and if, indeed, it be admitted that this vendee had notice, prior to its purchase, of every act in the transaction between its vendor and the Lances, it would nevertheless have no other knowledge than that upon which it acted, that is, that he had the right to sell and convey the property which it was about to buy.   It may be, and we are inclined to that opinion, that after payment of his own claims, and the debts which were a charge against the property, Bonnell held the balance of the money raised from the sale, if any such balance there was, as trustee for the Lances. But for this he ought to account, and not his vendee.   We also agree with the Master, that the bill before us is fatally defective for the want of proper parties.   The evidence clearly reveals the fact that William L. Lance, Sr., and Walter W. Lance, were interested in the property with the appellant, hence the defendants, if liable to account at all, were so liable to the three jointly, and not to either severally : Gloninger *v.* Hazard, 6 Wr., 389.

The decree of the Court of Common Pleas is affirmed at the costs of the appellant.