## DOANE v. CALIFORNIA LAND CO.

(Circuit Court of Appeals, Ninth Circuit. May 28, 1917.)

### No. 2854.

1. ABATEMENT AND REVIVAL ⬅12—PENDENCY OF PRIOR ACTION—STATE AND FEDERAL COURTS.

The pendency in a state court of a suit to have a declaration of trust declared a mortgage, to redeem thereunder, and to restrain the trustee from selling, was no ground for dismissing a suit in the federal court, by persons claiming under a sale by the trustee, to quiet title as against the claim of the plaintiff in the state court suit, as the pendency of an action in a state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 87–91, 94, 95, 98.]

2. COURTS ⬅312(8)—FEDERAL COURTS—JURISDICTION—CONVEYANCES TO GIVEN JURISDICTION.

Where the incorporation of a company to take title to land was bona fide and for the purpose of affording a means of handling and selling the land expeditiously and without the inconvenience incident to an ownership and control by numerous owners, and the conveyance to the corporation was bona fide and without reservation of any right in the trustee, the fact that it was also sought by such incorporation to secure the necessary diversity of citizenship to enable the jurisdiction of the federal court to be invoked in any litigation did not deprive such court of jurisdiction of an action to quiet title to the land.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 865–867.]

3. MORTGAGES ⬅8—CHARACTER OF INSTRUMENT—DECLARATION OF TRUST—"LIEN"—"MORTGAGE."

Owners of land, who had contracted to sell it to defendant, conveyed it to a bank by an absolute deed, and subsequently, by agreement of all parties, the bank executed a declaration of trust stating that the conveyance to it was for the benefit of persons named, and that the bank had paid no consideration and had no interest therein other than as trustee. It then provided that the bank should hold the property to secure to the vendors the payment by defendant of an amount specified in installments; that on payment of the first two installments defendant should receive possession; that thereafter the land in half sections might be released to defendant on payment of a specified amount to be applied on the next installment; that the trustee should apply moneys realized to the payment of its expenses and taxes and then to the payment of the purchase price, the balance to be held subject to defendant's orders; that the trustee should be paid by defendant for extraordinary services and have a lien therefor subject to the lien of the vendors for the purchase price; that defendant should pay all taxes, etc., indemnify the trustee from all liabilities, and defend all suits; and that in case of default by defendant the property should be sold by the trustee and the proceeds applied on the purchase price. A certificate thereto subscribed by all parties stated that the trusts were accurately stated therein. *Held*, that though the vendors' interest was spoken of as a lien, and though it was claimed defendant was treated as the owner, the transaction was not a mortgage, in view of Civ. Code Cal. § 2872, defining a "lien" as a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act, and section 2924, providing that every transfer of an interest in property other than

in trust made only as security for the performance of another act is to be deemed a "mortgage."

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 7, 8.

For other definitions, see Words and Phrases, First and Second Series, Lien; Mortgage.]

4. MORTGAGES ⊙=591(1)—REDEMPTION—RIGHT TO REDEEM.

After a sale of the land by the trustee in accordance with the terms of the declaration of trust, no right of redemption remained in defendant.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1693–1698, 1700, 1702–1708.]

5. MORTGAGES ⊙=334—POWER OF SALE—REVOCATION OF POWER—REVIVAL.

Assuming that notice by defendant to the grantors and the trustee that he thereby revoked the power of sale granted to the trustee operated to revoke such power, the power was revived where defendant subsequently, in obtaining additional time within which to make certain payments, signed an agreement that each and every one of the conditions or agreements of the declaration of trust should remain in full force and effect except as expressly modified thereby.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 1017, 1018.]

Appeal from the District Court of the United States for the Northern Division of the Southern District of California; Oscar A. Trippet, Judge.

Suit to quiet title by the California Land Company against F. F. Doane. From a decree for plaintiff, defendant appeals. Affirmed.

This is a suit brought by the appellee to quiet its title to certain lands in Fresno county, Cal., which had, on February 25, 1913, been conveyed to the Los Angeles Trust & Savings Bank by H. N. Coffin, John McMillan, and F. H. Parsons, appellee's predecessors in interest, under a contract for the sale thereof to appellant. The contract of sale was merged in a declaration of trust executed by the Los Angeles Trust & Savings Bank on August 14, 1914, under an agreement of all parties to that effect.

This declaration of trust recites that the conveyance to the Los Angeles Trust & Savings Bank, although absolute in form and purporting to convey the absolute legal and equitable title to the bank, was nevertheless intended to convey said property for the benefit of certain persons named and designated beneficiaries, subject to certain trusts provided therein, and that the bank paid no consideration for the property and had no interest therein other than as trustee. The declaration of trust then provided as follows: That the bank, as trustee, should hold the property to secure to H. N. Coffin, John McMillan, and F. H. Parsons (the vendors) the payment by appellant (the vendee) of $379,000 in various installments with interest thereon; that upon the payment of the first two installments of $20,000 and $55,000, respectively, the vendee should be given possession of the property, and thereafter any of the lands, in half sections, might be released to him from under the lien of the purchase price upon the payment by him of $10,000 for each half section so released, which payments were to apply on the next regular installment of principal and interest; that the personal property located on and used in connection with the property should be turned over to the vendee at the time of his taking possession of the property, to be used by him and his assigns during the life of the trust, and, in the event the conditions and provisions of the trust should be complied with, the title to the personal property should vest in the vendee and his assigns; that the trustee should apply the moneys realized from the sale of the property, first to reimburse itself for its expenses, fees, and commissions under the trust, as provided for therein, next to pay any taxes accrued, next to the payment of the purchase price and interest, and the balance to be held subject to the order of the vendee; that the trustee should be paid by the vendee for all extraordinary services rendered in the

⊙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

execution of the trust, in addition to the compensation theretofore provided, and should have a lien on all of the trust property to secure the same, subject to the lien of the vendors for the purchase price and interest; that the vendors should not be liable for any of such expenses, fees, and commissions of the trustee, except in the case of foreclosure sale, in which event they should pay a sum not exceeding $1,000 for such expenses, fees, and commissions, and trustee should not be entitled to any lien upon the lands, or any part thereof, superior to the lien of the vendors for the balance of the purchase price and interest; that it should be the duty of the vendee to pay all taxes, assessments, mortgages, liens, and incumbrances then on the property, or that might thereafter be assessed or levied, or placed thereon by the vendee or by any other person at his request; that the vendors and vendee should indemnify the trustee from any and all liabilities, claims, demands, injuries, or damages which it might suffer or sustain by reason of the acceptance of the trust or its position as trustee thereunder, and the vendee, and not the trustee, should defend any suit brought with reference to the property or growing out of the trust; that in case of the default of the vendee in the payment of any of the installments or interest, upon demand by the vendors (which demand constituted conclusive notice of an election to declare the whole amount of the purchase price and interest immediately payable), the property should be sold by the trustee at public auction and the proceeds applied to defray the expense of such sale, to the payment of the balance of the purchase price and interest, and the balance to the order of the vendee.

On February 24, 1915, the vendee mailed to the vendors a notice to the effect that he had revoked the power granted to the trustee to sell the property upon his failure to pay any installment of the purchase money or interest, as provided in the declaration of trust, which notice was received by them on the 27th of the same month. The same notice was served upon the trustee on February 26, 1915.

Various installments of principal and interest were paid by the vendee: but in 1915, being unable to meet the installment of interest falling due on September 1st, the vendee obtained a 30-day extension of time, at the end of which this installment was still unpaid, and has not since been paid. The vendors then elected to declare the whole remaining sum of the principal indebtedness and interest thereon immediately due and payable, under the terms of the declaration of trust, and ordered the trustee to sell the property. The trustee accordingly published a notice of such sale, on November 3, 1915, giving notice that the property would be sold at public auction on the 13th of the following month.

On November 20, 1915, the appellant brought an action in the superior court of the state of California in and for the county of Fresno, against the trustee, vendors, and others, praying judgment that the deed from the vendors to the trustee be declared a mortgage; and that appellant should have the right to redeem the property in the manner and time as provided by the laws of California for the redemption of property under foreclosure sale; and that the defendants be restrained from selling and conveying the absolute title to the property other than by foreclosure and sale as provided by section 726 of the California Code of Civil Procedure. Summons in this action was served upon the Los Angeles Trust & Savings Bank on the 30th of the same month, together with a copy of the complaint. On December 29, 1915, a lis pendens was filed.

The property having been sold under the trust deed to H. N. Coffin, John McMillan, and F. H. Parsons at public auction, the Los Angeles Trust & Savings Bank, on December 23, 1915, executed a deed in their favor as trustees.

Thereafter, Messrs. Coffin, McMillan, and Parsons and others, each owning an undivided one-tenth interest in the lands in suit, and being desirous of organizing as a corporation so that their business could be transacted through a board of directors, and thus expedite the handling and sale of the property, incorporated the appellee company under the laws of the state of Idaho; and on February 12, 1916, the parties named conveyed to it the lands in suit. It is stipulated that a further reason for the incorporation of appellee company was that by so doing an opportunity was afforded to invoke the jurisdiction

of a United States court, upon the ground of diversity of citizenship, in any litigation commenced by them or by any other persons against them.

The present suit was commenced by the appellee on February 21, 1916, alleging that the claim of appellant operates as a cloud upon its title, and praying that it be adjudged that appellee is the owner of the premises and entitled to their possession. Appellant moved to dismiss upon the ground that there was pending in the state court an action by the appellant against the predecessors in interest of appellee involving the same issues as involved in the present suit, and that the appellee corporation was formed for the purpose of ousting the state court of jurisdiction to try the issues involved in the case, and that therefore the suit should be dismissed as provided in section 37 of the Act of March 3, 1911, c. 231, 36 Stat. 1087, 1098 (Comp. St. 1916, § 1019). This motion was overruled. Appellant answered, alleging the transaction whereby the legal title to the property was vested in the Los Angeles Trust & Savings Bank as trustee was in the nature of a mortgage, and that the foreclosure thereof, not being in accordance with the provisions of the California statute relating to the foreclosure of mortgage liens, was invalid.

The District Court was of opinion that the deed in controversy was a trust deed, but that, even though it were in fact a mortgage, the appellant, not having tendered the amount due thereunder, should have no standing in a court of equity; and awarded appellee a decree quieting its title to the premises in suit. Defendant appeals.

G. R. Freeman, of Corona, Cal., for appellant.

Alfred A. Fraser, of Boise, Idaho, and H. G. Redwine, of Los Angeles, Cal., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] 1. The first assignment of error relates to the action of the trial court in overruling appellant's motion to dismiss upon the ground that there was pending in the state court an action by the appellant against the predecessors in interest of the appellee, and upon the further ground that the appellee corporation was formed and the lands conveyed to it for the purpose of ousting the state court of jurisdiction to try the issues involved in this case and of creating a case cognizable in the United States District Court.

So far as is shown by the record in the present case, the proceeding in the state court was never carried further than the filing of the complaint and service of summons upon the Los Angeles Trust & Savings Bank, one of the defendants therein. No judgment had been entered therein, and it does not appear that the cause had ever gone to trial, at the time the present suit was instituted.

"The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction, for both the state and federal courts have certain concurrent jurisdiction over such controversies, and when they arise between citizens of different states the federal jurisdiction may be invoked, and the cause carried to judgment, notwithstanding a state court may also have taken jurisdiction of the same case." McClellan v. Carland, 217 U. S. 268, 282, 30 Sup. Ct. 501, 505 [54 L. Ed. 762]; Falls City Const. Co. v. Monroe County (D. C.) 208 Fed. 482, 483; Wolf v. District Court, 235 Fed. 69, 74, 148 C. C. A. 563.

[2] 2. It is contended by the appellant that the appellee corporation was formed and the lands conveyed to it for the purpose of oust-

ing the state court of jurisdiction and of creating a case cognizable in the federal courts.

The parties have stipulated as to the various objects and benefits sought to be attained by such incorporation, among others:

"If it became necessary or desirable they could in that event, having the necessary diversity of citizenship, invoke the jurisdiction of the United States court in any litigation commenced by them or by any other persons against said corporation."

But it does not appear that the incorporation was a mere subterfuge for the purpose of obtaining that benefit, or that the benefit so obtained furnished the sole or controlling reason for such incorporation. Upon the contrary, it appears that the incorporation was bona fide and for the purpose of affording a means to expeditiously handle and sell the lands in suit and avoid the inconvenience incident to an ownership and control by numerous co-owners.

Nor does it appear that the conveyance from Messrs. Coffin, McMillan, and Parsons was other than bona fide; they held the lands as trustees for the 10 co-owners, and their conveyance to the corporation was nothing more than an execution of the trust in accordance with its terms; title was unconditionally vested in the corporation, and no right in the property reserved by the trustees. As said by the Supreme Court of the United States in Lehigh Mining & Manufacturing Co. v. Kelly, 160 U. S. 327, 336, 16 Sup. Ct. 307, 311 [40 L. Ed. 444]:

"The privilege of a grantee or purchaser of property, being a citizen of one of the states, to invoke the jurisdiction of a Circuit Court of the United States for the protection of his rights as against a citizen of another state— the value of the matter in dispute being sufficient for the purpose—cannot be affected or impaired *merely* because of the motive that induced his grantor to convey, or his vendee (vendor) to sell and deliver, the property, provided such conveyance or such sale and delivery was a real transaction by which the title passed without the grantor or vendor reserving *or having* any right *or power* to compel or require a reconveyance or return to him of the property in question."

[3] 3. It is next assigned as error that the trial court held the conveyance to the Los Angeles Trust & Savings Bank to be a trust deed and not a mortgage; which, it is urged, is inconsistent with the provisions of the instrument relied upon by appellee as a declaration of trust, wherein appellant is treated as the owner of the property and invested with the right of possession and the right to create liens and mortgages thereon, and the vendors as mortgagees and their interest designated and defined as a lien.

The fact that the trustors' interest is termed a "lien" in the declaration of trust is not conclusive. Section 2872 of the Civil Code of California provides:

"A lien is a charge imposed in some mode *other than by a transfer in trust* upon specific property by which it is made security for the performance of an act."

Nor is the fact that appellant is therein treated as the owner and invested with certain rights incident to ownership so inconsistent with the declaration of trust that we should close our eyes to the various other provisions thereof (particularly the provision that appellant should not be entitled to possession until certain payments had been

made), which are inconsistent with the mortgage theory contended for by appellant and which clearly evidence an intention to create a fee in trust for the purpose of securing to the grantors the payment of the purchase price, while vesting only an equitable title in appellant.

Appellant cites numerous Code sections and decisions of the state courts to the effect that a deed made to one as security for a debt may be enforced as a mortgage and not as a conveyance; that the lien thus created can only be enforced by means of foreclosure and judicial sale, as prescribed in the Codes; and that any agreement to the contrary, or which is in restraint of the right of redemption incident to such foreclosure sales, is void. But while it is thereby established that, under the state law, a conveyance made as security for another act is to be deemed a mortgage and subject to all its incidents, yet valid conveyances in trust are expressly excepted from the operation of this rule.

Section 2924 of the Civil Code of California provides that:

"Every transfer of an interest in property, *other than in trust*, made only as a security for the performance of another act, is to be deemed a mortgage."

The question, then, to be determined, is: Does the conveyance in the present case fall within this exception? It was not made as security for any act to be done by the grantors or any one in privity with them, but was made for the purpose of securing the grantors by withholding title from the buyer until he had fully complied with the conditions of the contract of sale. In this respect the present case is distinguishable from the cases cited by appellant, wherein certain conveyances made as security for acts to be done by the grantors, or by persons for whom they stood in the position of guarantors or sureties, were held to be mortgages.

That a valid trust may be created for the purpose of securing a debt is established in numerous decisions of the state courts. Sacramento Bank v. Alcorn, 121 Cal. 379, 53 Pac. 813, and cases there cited. But it is urged that the latter case is distinguishable from the one at bar. It is true that in that case, as in the various cases cited by appellant, the conveyance was for the purpose of securing a debt owing by the grantors; but this distinction only tends, we think, to strengthen the appellee's position. In other words, if A. may by conveying to X. create a valid trust as security for a debt owing by A. to B., a fortiori he may by such a conveyance create a valid trust as security for a debt owing from B. to himself or another. The further distinction, that there was in the case at bar no provision for a reconveyance to the trustors, also tends rather to strengthen the trust than the mortgage theory.

"A mortgage is essentially a pledge or security, and it is distinguishable from a trust in this only: That the property described in it is to revert to the mortgagor on the discharge of the obligation for the performance of which it is pledged." Lance's Appeal, 112 Pa. 456, 4 Atl. 375.

It is also urged that the conveyance in the case at bar differs from that in the Alcorn Case in that it is not absolute. But it appears that the deed executed on February 25, 1913, was absolute in form, and the recital in the declaration of trust that, "Whereas, the said conveyance

to the Los Angeles Trust & Savings Bank is absolute in form and purports to convey to said bank the absolute, legal and equitable title to all of said property, * * * nevertheless the said deed and grant was intended to convey said property to said bank for the benefit of those certain persons hereinafter named and designated as beneficiaries, and whose respective interests are hereinafter set up; and * * * said Los Angeles Trust & Savings Bank paid no consideration for said property, and has no interest therein, except as hereinafter stated"—does not mean, as contended by appellant, that the bank received only a title in form and did not in fact hold either the legal or equitable title. Upon the contrary, this clause, when read with the other provisions of the instrument, clearly evidences an intention to declare an apparently absolute conveyance of the legal and equitable title to be a conveyance of the legal title only, to be held by the bank subject to certain trusts thereinafter set forth.

It is contended, however, that the transfer to the trustee amounts in effect to a conveyance to appellant and a reconveyance by him to the trustee as security for the purchase money, and that the latter transaction should be construed as a mortgage. Such a construction, we think, would do violence to the plain intent and purpose of the parties as evidenced by the unambiguous terms and conditions of the declaration of trust, which was ratified in a certificate thereto attached, subscribed by them, and reading as follows:

"We, the undersigned, do hereby certify and declare that the above and foregoing declaration of trust correctly and accurately states and declares the trusts under and by which the property described in said declaration of trust is held by the Los Angeles Trust & Savings Bank, as trustee, and that the same correctly sets forth and declares our respective interests therein, and we hereby ratify and confirm the same in all its particulars in accordance with the conditions and stipulations therein expressed."

The declaration of trust does not provide that appellant should receive the title until after a full compliance with the terms and conditions of the trust. In this respect the case is similar to that of Woodard v. Hennegan, 128 Cal. 293, 60 Pac. 769, wherein plaintiff's testator advanced money for the purchase of certain lands and took title in his own name as security, executing to the defendant a bond for a deed or agreement to convey the same to defendant on or before June 1, 1894, provided defendant should have paid the purchase money with interest. Defendant was in possession of the lands at the time of the making of the bond for a deed, and remained in possession, paying the interest on the purchase money until the death of plaintiff's testator. Plaintiff sued to recover possession and to quiet title as against defendant. Upon appeal from a judgment in favor of defendant, the Supreme Court of California said:

"The contention of defendant in the court below, and the one evidently adopted by the court, was that the deeds made to Woodard were in fact made as security, and that the transactions amounted to and were in effect a mortgage. The title was held by Woodard as security, and in some features the transactions partook of the nature of a mortgage; but we do not think that the effect was simply a mortgage and nothing more. If defendant had been the owner of the property and had borrowed the fourteen thousand dollars

from Woodard, giving deeds to the property as security for the amount, the transaction would in law have been a mortgage. But in this case the legal title never was in defendant. He had no legal title to convey, and did not attempt to convey, any title as security. The legal title was transferred to Woodard, and he held it, not only as security, but in trust for defendant."

Referring to section 2924 of the Civil Code of California, the court said:

"The transfer in this case was not made solely as security for the purchase money. It was made for the purpose of finally having the title go to defendant, but in the meantime such title was held in trust for defendant and for the security of Woodard. The transactions did not simply constitute a mortgage and nothing more"—citing cases.

Concerning the quality of the interest held by the trustee in that case, the court said:

"When defendant desired to purchase the land, the owners, Lowe and Merkeley, might have given him a bond for a deed each for the amount of the purchase price. If this had been done, it does not seem that it could be contended that Lowe and Merkeley would hold the title as mere security. Their position is well defined in Pomeroy's Equity Jurisprudence, vol. 3, § 1260. The author says, in speaking of a bond or agreement to convey from vendor to vendee: 'In the latter, although possession may have been delivered to the vendee, and although under the doctrine of conversion, the vendee may have acquired an equitable estate, yet the vendor retains the legal title, and the vendee cannot prejudice that legal title or do anything by which it shall be divested except by performing the very obligation on his part which the retention of such title was intended to secure, namely, by paying the price according to the terms of the contract. To call this complete legal title a lien is certainly a misnomer. In case of a conveyance, the grantor has a lien, but no title. In case of a contract for sale before conveyance, the vendor has the legal title and has no need of any lien. His title is more efficient security, since the vendee cannot defeat it by any act or transfer even to or with a bona fide purchaser.'

"We think Woodard possessed the same rights as would have been possessed by Lowe and Merkeley if they had made the agreement to convey to defendant."

This decision was followed in Lamberson v. Bashore, 167 Cal. 387, 390, 139 Pac. 817, 818, wherein the court said:

"While it is true that an instrument purporting to convey the title to real property may be shown to have been intended as a mortgage, clear and convincing proof of that fact must be shown to justify a court in so finding, and appellate courts are slow to disturb a finding either against or in favor of the theory that a mortgage has been shown to exist"—citing Beckman v. Waters, 161 Cal. 584, 119 Pac. 922.

Under the foregoing authorities, we must hold that the legal title was never in the appellant. He could not, therefore, convey the same as security for his payment of the purchase money for the property. On the contrary, the title was conveyed by the vendors directly to the trustee, who, we think, possessed the same rights as they would have possessed under the contract of sale had they retained the title. In view of these facts, we must hold the transaction to be something more than a mortgage; it was made for the purpose of finally having the title go to appellant, but in the meantime such title was held in trust for appellant and for the security of the vendors.

[4] 4. It is contended further, on behalf of the appellant, that he at no time contracted away his right of redemption, and he now claims

that right under the deed of trust construed as a mortgage. The deed of trust provides for a sale of the property by the trustee to accomplish the objects of the trust, and the method of procedure is provided in detail. The certificate at the end of the deed of trust declares that it correctly and accurately states the trust and confirms it in all particulars in accordance with the conditions and stipulations therein expressed. The certificate is signed by the appellant, and is therefore a part of his contract. The sale of the property by the trustee appears to have been made in accordance with the terms specified in the deed of trust.

In Bell Mining Co. v. First Nat. Bank, 156 U. S. 470, 477, 15 Sup. Ct. 440, 443 [39 L. Ed. 49], the Supreme Court of the United States had before it this question under the laws of Montana. In that case the court said:

"There is nothing in the law of mortgages, nor in the law that covers what are sometimes designated as trust deeds in the nature of mortgages, which prevents the conferring by the grantor or mortgagor in such instrument of the power to sell the premises described therein upon default in payment of the debt secured by it, and, if the sale is conducted in accordance with the terms of the power, the title to the premises granted by way of security passes to the purchaser upon its consummation by a conveyance. Grant v. Burr, 54 Cal. 298; Bateman v. Burr, 57 Cal. 480.

"The power of sale in the indenture, whether we call it a deed of trust or a mortgage, does not change its character as an instrument for the security of the indebtedness designated, but it is an additional authority to the grantee or mortgagee, and, if he does not choose to foreclose the mortgage by any of the ordinary methods provided by law, he can proceed, under the power added for the sale of the property, to obtain payment of the indebtedness. The insertion of a power of sale does not affect the mortgagor's right to redeem so long as the power remains unexecuted, and the mortgage is not, as it may be, foreclosed in the ordinary manner; but, when a sale is made of the interest of the mortgagor, his right is wholly divested, embracing his equity of redemption."

[5] 5. With respect to the further contention that the power of sale contained in the declaration of trust was revoked by the notices of rescission served by appellant upon the trustee and vendors on February 26 and 27, 1915, it may be said that thereafter appellant, being unable to make the payment of principal and interest falling due on March 1, 1915, in accordance with the terms and conditions of the declaration of trust, entered into an agreement for additional time within which to pay the various installments of principal and interest remaining unpaid. It was expressly understood and agreed in this renewal contract "that each and every of the conditions or agreements mentioned in said declaration of trust shall remain in full force and effect except as the same is expressly changed or modified by this agreement," and the instrument was signed by appellant. Even were we to concede that the power of sale was revoked by the notices of rescission, the effect of the latter agreement would be to revive such power in the trustee; and, as no further attempts to effect a revocation have apparently been made, this power was valid and subsisting at the time of the trustee's sale. This brings the case within the rule established by the authorities heretofore cited.

The decree of the District Court is affirmed.