[L. A. No. 2724.   Department One.—December 15, 1911.]

## ELIAS BECKMAN, Appellant, v. WILLIAM G. WATERS and SAN MIGUEL ISLAND COMPANY, Respondents.

MORTGAGE—DEED ABSOLUTE ON ITS FACE.—An instrument purporting to convey the title to real or personal property may be shown to have been intended to operate as a mortgage.

ID.—CLEAR AND CONVINCING EVIDENCE OF MORTGAGE—DETERMINATION OF TRIAL COURT ON CONFLICTING EVIDENCE—APPEAL.—Although clear and convincing evidence is required to justify a court in finding that a deed which purports to convey the title to land in fee simple was intended to be a mortgage, the question whether or not the evidence offered to change the ostensible character of the instrument is clear and convincing is one for the trial court, and its determination in favor of either party upon conflicting or contradictory evidence will not be reviewed on appeal.

ID.—EVIDENCE — INDEBTEDNESS DUE BY GRANTOR TO ASSIGNOR OF GRANTEE.—In the present case it is held, upon a review of the evidence, that the trial court was justified in concluding therefrom that the deed in question was, in fact, a mortgage to secure the payment of an indebtedness which was originally due from the grantor to the assignor of the grantee, notwithstanding the fact that there was no writing whereby the grantor in terms bound himself to pay such sum to the grantee.

ID.—DEPOSITION—FAILURE OF NOTARY TO SIGN.—A deposition, the certificate to which was sealed but not signed by the notary before whom it was taken, is not authenticated in the manner required by section 2032 of the Code of Civil Procedure, and is inadmissible in evidence.

ID.—REFUSAL TO CONTINUE TRIAL—ABSENCE OF PLAINTIFF—INSUFFI-CIENT SHOWING.—It is not an abuse of discretion for the trial court to refuse a motion for a continuance on the ground of the absence of the plaintiff, where there is nothing in the affidavits used on the motion indicating that he would be able to appear at any later time, nor any showing of an excuse for the failure to take his deposition in proper form before the trial.

APPEAL from an order of the Superior Court of Santa Barbara County refusing a new trial.   Charles Monroe, Judge presiding.

The facts are stated in the opinion of the court.

J. F. Conroy, and E. W. Squier, for Appellant.

W. S. Day, and Henley C. Booth, for Respondents.

SLOSS, J.—This is an appeal by plaintiff from an order denying his motion for a new trial. The controversy between the parties turns principally upon the effect of an instrument, in form a deed absolute, executed by the defendant Waters to plaintiff Beckman, and purporting to convey certain real estate, to wit, the island of San Miguel, containing about fourteen thousand acres of land and situated in the Pacific Ocean off the coast of Santa Barbara County. On the part of the plaintiff the claim was and is that this instrument was in fact what it purported to be, while the defendants contended below, as they contend here, that the deed was intended to be and was a mortgage. The transaction included the execution and delivery by Waters to Beckman of a bill of sale of live-stock and other personal property on the island, and the same question of mortgage or absolute transfer is presented with reference to this bill of sale.

The action was commenced on March 11, 1904. An amended complaint, filed on July 2, 1904, alleges that on or about the first day of February, 1892, Waters executed and delivered to plaintiff a deed conveying the said island of San Miguel, and on the same day executed and delivered to plaintiff a bill of sale transferring the personal property above referred to. It then alleges that on the same day, February 1, 1892, the plaintiff executed and delivered to Waters an instrument in writing whereby, after reciting the conveyance by Waters to Beckman of all the right, title, and interest of Waters in the island of San Miguel and in the personal property thereon, it was agreed that Waters, his heirs, executors, administrators, or assigns "may at any time hereafter within three years from date hereof, pay to me, my heirs, executors, administrators or assigns, the sum of $7,000, gold coin of the United States, with interest thereon at the rate of ten per cent per annum, interest payable semi-annually, and upon the payment of the said sum and interest thereon in manner and time aforesaid I do . . . agree to reconvey by a good and sufficient quitclaim deed and bill of sale to said William G. Waters . . . all of my right, title and interest in and to the above described real and personal property and the increase thereof, excepting such personal property or products from said island that are

sold in the mean time, and in the event of such payment in
the manner and at the time hereinabove set forth with the
interest at the time it becomes due, then the said W. G. Waters
shall be entitled to credit for the amount of such sales upon
said indebtedness." It is alleged that on March 25, 1892, de-
fendant Waters paid one thousand dollars on account of the
purchase price of the property mentioned in said instrument;
that at divers times prior to January 1, 1896, sums aggregat-
ing fifteen hundred dollars were received in part payment of
said purchase price as proceeds and profits accruing from the
property on the island and that on or about the first day of
January, 1896, the plaintiff at the request of Waters granted
said defendant further time for payment of the balance of the
purchase price. Plaintiff, it is alleged, held possession of the
real and personal property so transferred to him from the
first day of February, 1892, to the eleventh day of May, 1896,
said island being in charge and control of a manager employed
by plaintiff; said manager died on the eleventh day of May,
1896, whereupon Waters assumed charge and control of said
island, and he and those claiming under him have ever since
held possession of said island and property as trustees for
plaintiff. On March 8, 1897, Waters sold, conveyed, and as-
signed unto his co-defendant, San Miguel Island Company, a
corporation, his right to and interest in said island and the
property thereon, and said corporation has ever since claimed
an interest in said real and personal property. It is further
alleged that Waters is the manager of the business of said
corporation; that as such he has received rents, issues, and
profits of said island for which he has not accounted, and
that the defendants claim said island and the property thereon
adversely to plaintiff. No payments except as above stated
have been made under said agreement of purchase. Under
these allegations the plaintiff prayed for the appointment of
a receiver, that the defendants be required to account, that
they be restrained from disposing of the real or personal
property, and that upon the ascertainment of the amount due
by Waters to plaintiff under the agreement of February 1,
1892, the court order said amount to be paid to plaintiff and
in default of such payment that the interest of the defendants
in the property be divested.

The defendants answered separately, denying most of the

material allegations of the complaint and setting up affirmative defenses. The nature of the issues raised will appear with sufficient clearness from the following summary of the findings.

The court found that the possession of the property was never delivered to the plaintiff and that plaintiff never held possession as owner or otherwise; that defendant Waters never held possession of said property as trustee for the plaintiff or otherwise than as owner; that, in fact, said deed and bill of sale and said written agreement, all dated February 1, 1892, were and were intended by the parties thereto to be a mortgage by Waters to Beckman to secure the payment to Beckman of the sum of seven thousand dollars on or before three years from February 1, 1892, with interest thereon at the rate of ten per cent per annum, payable semi-annually. It was found that no extension of time had been granted by plaintiff to defendant and that plaintiff's claim was barred by the statute of limitations.

As above suggested, the plaintiff's main contention on his motion for a new trial was that the evidence did not sustain the finding that the transaction in question constituted a mortgage. Of course, if the plaintiff's position was that of a mortgagee, there can be no question that his right to relief is barred by limitation. The debt secured by the mortgage was due three years from February 1, 1892. The finding that no extension was granted is not attacked, and, consequently, an action to foreclose the mortgage was barred at the expiration of four years from the maturity of the debt, or February 1, 1899. The last mentioned date was more than five years before the commencement of the action.

It is thoroughly settled by the decisions of this court that an instrument purporting to convey the title to real or personal property may be shown to have been intended to operate as a mortgage. It has often been said that clear and convincing evidence is required to justify a court in finding that a deed which purports to convey the title to land in fee simple was intended to be a mortgage. But, as is said in *Couts* v. *Winston*, 153 Cal. 686, [96 Pac. 357], (in which many earlier cases are cited), "whether or not the evidence offered to change the ostensible character of the instrument is clear and convincing is a question for the trial court. . . . In such cases,

as in others, the determination of that court in favor of either
party upon conflicting or contradictory evidence is not open
to review in this court." And similarly, in *Wadleigh* v.
*Phelps,* 149 Cal. 627, 637, [87 Pac. 93, 98], it is said that this
court "will not disturb the finding of the trial court to the
effect that the deed is a mortgage, where there is substantial
evidence warranting a clear and satisfactory conviction to that
effect."

In the case at bar it appears that, before any of the transac-
tions here involved, the defendant Waters and one Schilling
had been jointly interested in the ownership of San Miguel
Island and the personal property thereon. In December, 1890,
Waters had purchased Schilling's interest, giving him there-
for a promissory note for seven thousand dollars, secured by
an instrument described in the record as a "pledge" of the
island and of the property thereon. This note and pledge were
assigned by Schilling in January, 1892, to the plaintiff Beck-
man, who was acting on behalf of himself and one Gaty.
A finding which is not attacked declares that this assignment
was a part of the transaction of February 1, 1892, by which
the deed, bill of sale, and reconveyance agreement were exe-
cuted. Coincident with the assignment of the pledge, Schil-
ling made a quitclaim deed to Beckman of an undivided one-
half interest in the island. This deed declared that it was
made to Beckman for the purpose of enabling him "to fulfill
all the obligations required in the said pledge of the said
Schilling." Beckman and Gaty signed an agreement declar-
ing that they were equally interested in the purchase of the
note and pledge from Schilling, and on the first day of
February, the date on which the papers between Beckman and
Waters were executed, Beckman executed to Gaty a deed of
an undivided one-half interest in the island and the personal
property thereon, such instrument reciting that Gaty had
advanced a part of the consideration for the transfer from
Schilling to Beckman. On the same day and as part of the
same transaction, Beckman conveyed to Waters all of his
interest in the island and personal property by instruments
reciting that they were intended to discharge the pledge of
Schilling. Then followed the making of the deed and bill of
sale and the agreement set forth in the complaint.

We think these facts fully justified the trial court in con-

cluding that the conveyance from Waters to Beckman was, in fact, a mortgage to secure the payment of seven thousand dollars, and this, notwithstanding the fact that there was no writing whereby Waters in terms bound himself to pay such sum to Beckman. It will be observed that seven thousand dollars was the consideration which Waters had originally agreed to pay Schilling for a one-half interest in the property, and that the payment of this sum was secured by lien upon the property. Beckman and Gaty succeeded to the interest of Schilling. New papers were executed eliminating Schilling from the transaction and introducing Beckman as the party with whom Waters was dealing. The same property which had been "pledged" to Schilling to secure the payment of the seven thousand dollars was conveyed to Beckman, and this property was by the agreement accompanying the deed and bill of sale to be reconveyed to Waters upon payment of the same sum of seven thousand dollars, which had, two years before, been the purchase price of an undivided one-half interest. Waters remained in possession, and as is shown by the pleadings, made partial payments to Beckman.

Taking all of these transactions together, it is a reasonable inference that the transaction between Beckman and Waters was intended to simply substitute the former for Schilling. The fact that under the terms of the agreement set forth in the complaint Waters was to receive a retransfer on payment of the precise sum which had been due to Schilling, lends strong support to the view that Beckman was purchasing the claim of Schilling, together with the security for it held by Schilling. It is certainly unlikely that Waters, after agreeing to pay seven thousand dollars for a one-half interest in the property, would be willing to part with the entire property for no greater consideration than a release of his liability for this amount. And it would likewise be strange that Beckman, if he were the owner of property one half of which had, two years before, been sold for seven thousand dollars, should be willing to agree to sell the entire property at any time within three years for the same sum with interest. Again, the partial payments which in his complaint Beckman admits having received are more consistent with the existence of a debt and mortgage than of an agreement for sale which contained no provision for partial payments. A further circumstance sup-

porting the conclusion of the court below is the execution by Beckman to Gaty on February 1, 1892, the very date of the transactions in question, of a deed conveying a one-half interest in the property. If his interest was that of a mortgagee his conveyance might well have been intended to transfer an interest in the mortgage, but if, on the other hand, he was the owner and had already made an agreement to sell the property to Waters, he could not properly convey any part of the property to any one else.

It is undoubtedly true that there can be no mortgage without an indebtedness (*Ahern* v. *McCarthy*, 107 Cal. 382, [40 Pac. 482]; *Henley* v. *Hotaling*, 41 Cal. 22), and that no note for the seven thousand dollars was given by Waters. But in this respect the case is analogous to *Couts* v. *Winston*, 153 Cal. 686, [96 Pac. 357]. There, too, there was no direct promise in writing to pay the sum advanced, but the transaction as a whole was such as to justify the inference that the money was advanced as a loan and that the party executing the deed had at least impliedly agreed to repay the sum advanced. The same inference is permissible here, and is the more reasonable because of the fact that the instrument providing for a reconveyance speaks of payment of the sum of seven thousand dollars, "at the time it becomes *due*," and provides for credits to Waters upon his *"indebtedness."*

There are several alleged errors of law assigned by the appellant. The plaintiff offered in evidence a power of attorney from himself to Gaty. This paper does not appear to have been executed on the same day as the instruments in controversy, and was not proven to be a part of the same transaction. Furthermore, there is nothing to show that it was ever brought to the knowledge of the defendant Waters, and it could not therefore bind him.

The plaintiff was not present at the trial. His deposition, taken in a former action, was offered. The defendants objected to its admission upon two grounds, one of which was that the certificate of the notary before whom the deposition was taken was not signed. The objection was sustained. There was no error in this ruling. Under section 2032 of the Code of Civil Procedure, a deposition must be "certified by the judge or officer taking" it. A certificate, prepared in proper form, was attached to the deposition, but, as suggested above,

the notary had neglected to sign it although the notarial seal had been affixed. Where, as here, the form of certificate indicates that it was intended that the authentication should be by means of a signature, we do not think a sealed, but unsigned, certificate amounts to a compliance with the requirement that the deposition shall be certified by the officer.

It is also claimed that the court erred in denying the motion for a continuance on the ground of the absence of the plaintiff. The court did not abuse its discretion in this ruling. The affidavits offered to support the motion showed, at most, that the plaintiff was unable to be present at the time set for the trial. But there was nothing to indicate that he would be able to appear at any later time, nor was there any sufficient showing of an excuse for the failure to take his deposition in proper form before the trial.

No other points are raised.

The order is affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.