[Civ. No. 4222. Fourth Dist. Sept. 22, 1950.]

VERNON F. BENNETT, Petitioner, v. THE SUPERIOR COURT OF SAN DIEGO COUNTY et al., Respondents.

Vernon F. Bennett, in pro. per., for Petitioner.

No appearance for Respondents.

MUSSELL, J.—In this proceeding in certiorari, petitioner, an attorney, seeks to annul an order of the superior court adjudging him guilty of contempt and assessing a fine therefor in the sum of $500.

Petitioner, representing plaintiff Ruth E. Hunt, filed an action for damages for personal injuries in the superior court of San Diego county against the San Diego Transit System. The trial was had before respondent judge, without a jury, and at the conclusion thereof, the court ordered a judgment in favor of the defendant and also issued a written order adjudging petitioner guilty of contempt. The order recites ''That during said trial the conduct thereof was unduly delayed by conscious, wilful and contumacious action and conduct upon the part of said Vernon F. Bennett, with a view of preventing the defendant named from having a fair and just trial in said action upon the issues joined, and of unnecessarily consuming the time of said court. All of said contumacious conduct of said Vernon F. Bennett herein mentioned was committed in the immediate presence of the court, while the court was in session, and during said trial, and said conduct is shown in part by the quotations from the testimony and proceedings at said trial, particularly as follows: . . .'' Numerous excerpts from the testimony and proceedings, which were relied upon by the court to show the alleged contumacious conduct of petitioner, are then set forth. These excerpts, according to the order, show constant and repeated interruptions and statements by the petitioner during the examination of witnesses by opposing counsel; the interposition of objections and the indulgence in argument in bad faith; the attempt to introduce in evidence certain documents as depositions; the argument of objections after the court's rulings thereon; the making of irrelevant and immaterial statements, frequent quarreling and bickering with opposing

counsel; and the inclusion in questions of repetitious and immaterial matter. The gist of the charge set forth in the order is that the conduct of the trial was unduly delayed by the acts of petitioner and that his actions and conduct constituted an attempt to prevent the defendant from having a fair trial.

It appears from the petition for the writ herein, the allegations of which are not denied, that the trial of the action began on June 14, 1950; that on the 16th day of June the trial judge, at his own instance, continued the matter to June 19th at 2 o'clock p. m.; the trial proceeded from 2 o'clock p. m. to 4:30 p. m. on that date and was continued by the trial judge to June 21st, without request of counsel for either of the parties. The trial was resumed at 2 o'clock on June 21st and continued throughout that day. The following day it was again continued by the trial judge to June 26th and the taking of evidence was concluded on June 27th; that the court was always recessed by the trial judge at 4:30 p. m. each afternoon and on a few occasions before that time; that on many occasions the recesses in the morning and afternoon sessions extended for longer than 10 minutes; that many witnesses were produced and testified upon behalf of plaintiff and defendant; that the examination of the witnesses was very lengthy and repetitious and consumed a great deal of time; that the trial court "took off" two full days during the trial of said cause and the court was not always convened promptly at the morning or afternoon sessions; that different persons came frequently to see the trial judge and the trial of the case was either not begun or delayed while matters were being discussed with the trial judge.

In addition to the matters set forth in the petition, it appears from the excerpts set forth in the order that considerable of the time of the court and of the trial was consumed and delay occasioned by the conduct of the attorney for the defendant in said action. It also appears that the trial court, in many instances, interrupted counsel on both sides. Its comments made in connection with rulings on objections and statements of counsel consumed much of the time of the trial.

A careful examination of the contents of the order and of the reporter's partial transcript of the proceedings impels us to conclude that the trial could have been more expeditiously conducted, and the fault, if any, lies not alone upon petitioner. The prolongation thereof by objections, interrup-

tions and statements of the petitioner, under the circumstances shown, did not constitute a contempt of court. ▮ The charge that the petitioner was attempting to prevent the defendant from having a fair trial does not find substantial support in the record. This was not a jury case and judgment was entered for the defendant.

The questions asked by the petitioner and his statements to the court which evidently precipitated the trial court's action in adjudging petitioner guilty of contempt, as shown by the partial transcript and the excerpts therefrom set forth in the order, occurred during the cross-examination of a defense witness in reference to a so-called deposition and were as follows:

"BY MR. BENNETT: Q. And you were also asked on this same day, were you not, as to how long you had been a student operating buses and you refused to answer, did you not? A. I don't remember.

"Q. You don't remember? A. (No answer.)

"MR. BLEDSOE: I am going to object, if the Court please, to Counsel attempting to impeach the witness with that unsigned deposition. It is not a deposition. He has refused to have the deposition drawn up. That is only a portion of it. The witness has never had an opportunity to sign and subscribe to it. I don't know what the rest of it says. I have that portion myself, a copy.

"THE COURT: You can ask him questions. Unless you have the deposition, it is not admissible. You cannot ask him about any document, sir.

"MR. BLEDSOE: This is not a party, if the Court please, and he can call the reporter in or anything else. If the reporter says it is it, I——

"MR. BENNETT: I call your attention to page 15, line 15 and the question:

"'Q. How long had you been a student, Mr. Lovett——' And he never was permitted to answer the question, and:

"'Do you refuse to answer the question?' 'A. Yes.'

"And Mr. Bledsoe knows it and——

"THE COURT: You can ask him then.

"MR. BENNETT: All right. I will ask him.

"THE COURT: No, because the charge that that document you have there before you is an unsigned document.

"MR. BLEDSOE: Not only that, but isn't complete and he was asked the question here. Counsel tried to take the deposition in two parts and he was——

"The Court: He has answered your question anyway. He said he doesn't remember. Go on.

"Mr. Bennett: He also said——

"The Court: I don't care to hear from you. Either go on with this cross-examination or the witness will be excused.

. . . . . . . . . . . . . . .

"By Mr. Bennett: Q. And did you, as you read over the transcript of the questions asked you and the answers given by you on April 20, 1950, did you make any corrections in the copy that you read? A. No.

"Q. You didn't. You saw no occasion to make any corrections, is that right?

"Mr. Bledsoe: Objected to as argumentative.

"The Court: Objection sustained.

"By Mr. Bennett: Q. And you answered on and found in reading that, that you refused, did you not, to answer the question as to how long you had been a student?

"Mr. Bledsoe: I want to object to that as already asked and answered.

"Mr. Bennett: I haven't got an answer yet, your Honor.

"The Court: Objection sustained. He said he didn't remember.

"Mr. Bennett: Well, I can refresh his recollection by a document he has read and a transcript of the statement that he made.

"Mr. Bledsoe: I object to that. If he wants to impeach this witness—he brought this about. Let him call the reporter in and have the reporter go through his notes. Alan Randol.

"The Court: Objection sustained.

"Mr. Bennett: May I say, your Honor, he read this and made no corrections.

"The Court: Now, if there are any more voluntary statements such as now, I will excuse this witness. You have done enough procrastinating here. Just nothing but down right pettifogging, sir.

. . . . . . . . . . . . . . .

"By Mr. Bennett: Q. And when you appeared before Judge Glen and you were ordered to answer the question, you answered, did you not, that you did not know whether you had operated on any other route that day or not?

"A. I don't know. I don't know what questions were asked me that day.

"Q. I see. And then you were asked at the time of the taking of that deposition as to whether you recalled Mr. Street speaking to you between First and Sixth Streets and you refused to answer that question, did you not? A. I don't remember.

"Q. You don't remember. Calling your attention to page 23——

"MR. BLEDSOE: Now, I want to make that same objection. The Court has ruled on it and walks up there——

"THE COURT: Now, Mr. Bennett, the Court will take rather unusual measures to prevent you and warns you now that you shall not show that witness that document again. The Court has already passed on it and it is contemptuous conduct for you to persist in trying to get that matter in the record and if you persist any more, you will do so at your peril.

"MR. BENNETT: May I discuss it with your Honor?

"THE COURT: What?

"MR. BENNETT: May I discuss it with your Honor?

"THE COURT: No, sir, you may not discuss it.

"MR. BENNETT: All right, your Honor.

. . . . . . . . . . .

"BY MR. BENNETT: Q. Mr. Lovett, how is your recollection with reference to the circumstances connected with the happening of this occurrence on December 2, 1947? A. Well, very good, I think.

"Q. You do. Now, have you refreshed your recollection in any way before coming to testify yesterday? A. No, nothing more than just reading over that deposition.

"Q. You read over the deposition, did you? A. Sometime ago.

"Q. And that was in Mr. Cameron's office or Mr. Bledsoe's office? A. Yes.

"Q. And you read it over completely? A. No.

"Q. You didn't read all of the deposition? A. No.

"MR. BLEDSOE: Well, it isn't all written up, Mr. Bennett.

"BY MR. BENNETT: Q. That is, did you read——

"MR. BLEDSOE: I want to object to Counsel referring to this as a deposition. If he wants to refer to questions and answers—— We have gone into this. There is an affidavit in the file it was taken but he used this to cross-examine two witnesses we had under—present since they were necessary parties, then immediately dismissed and didn't write up half of it.

"The Court: Well, whether or not that was an ethical practice——

"Mr. Bledsoe: I can't go into that.

"The Court: ——is certainly questionable, but is not now here for decision.

"Mr. Bledsoe: I have argued——

"The Court: However, what Counsel uses to cross-examine a witness, this Court has nothing to do with. He can look at the Holy Bible or a funny sheet and use that as a basis for cross-examination. However, he has been admonished not to refer to a book and page number in the document that is—may be termed for the purpose of convenience, an unsigned deposition.

"Mr. Bledsoe: No. It is only a partial transcript of a deposition.

"The Court: He can take a partial transcript that a reporter or somebody that made a transcript—he can take that transcript and do anything he wants, but he cannot ask this witness, 'Didn't you testify such and such a thing on such and such an occasion'——

"Mr. Bledsoe: I think the Court is aware of the authorities a deposition has to be taken in manner provided by the Code.

"The Court: No question about that.

"Mr. Bledsoe: Can we refer to it as a document when it isn't a deposition?

"The Court: Yes, and Mr. Bennett has been admonished not to refer to a deposition that does not exist. That is going outside the record. It is highly improper and unethical for an attorney to do that and if he does that in the face of the admonition of the Court, he does it at his peril in this department. Let's understand each other. I have warned you yesterday about it. If it happens once more, I shall not warn you again. What is the question please?

"Mr. Bennett: May I say this, your Honor? You have listened to Counsel. I would like the privilege of presenting some authorities of my own.

"The Court: What is the question? (Record read.)

"The Court: Now, I warned you yesterday not to refer to this document which is admittedly unsigned as a deposition. I don't want to hear it any more, sir.

"Mr. Bennett: I will do my best to comply with your Honor——

"THE COURT: If you don't, you do it at your peril. I assure you, I have warned you the last time.

"MR. BENNETT: May I say this, your Honor? If this proceeding—if there had been another trial of this matter or this matter had been questioned about this witness and a transcript had been made of the testimony of this witness, I would have a perfect right to refer to that transcript of his testimony without the witness even having had an opportunity to refer to it or to read it. I could show it to him on the witness stand. Now, it so happens a deposition was taken or attempted to be taken on the 20th day of April, 1950, with the proper proceedings leading up to the taking of that deposition. A reporter was present and took the——

"THE COURT: We have gone into that. I don't care to hear any more about it. I understand the circumstances. I have been told several times as to the circumstances under which that statement of the witness was made. Call it testimony if you want, but it is no deposition and you know it is no deposition. Now, I don't want to hear any more about that document.

"MR. BENNETT: Very well, your Honor.

"BY MR. BENNETT: Q. At— on April 20, 1950, you appeared in my office pursuant to a subpoena and you there answered certain questions which were propounded to you, did you not? A. Yes.

"Q. And at the time that was being done, you were under oath at that time, were you not? A. Yes.

"Q. You were sworn to testify to the truth and nothing but the truth, so help you God, at that time by Mr. Alan Randol, a notary public and court reporter, were you not? A. Yes.

"Q. And during all of the time that you were in my office on April 20, 1950, Mr. Alan Randol, the reporter and notary, was present, was he not? A. Yes.

"Q. And during all of that time he was taking down the questions and the answers which were asked and the answers given by you, did he not?

"THE COURT: You don't know whether he was taking it down or not, do you?

"THE WITNESS: No. He was——

"BY THE COURT: Q. You know he was writing there?

"A. He was writing. That's all I know.

"BY MR. BENNETT: Q. And since that time, you have read

over a transcript of what took place on April 20, 1950, have you not?

"THE COURT: Mr. Bennett, the Court finds you in contempt of Court and sentence will be deferred until the conclusion of the trial.

"MR. BLEDSOE: May I——

"THE COURT: All right.

"MR. BLEDSOE: A transcript, of course, if certified by the reporter. We don't have anything. It hasn't been drawn up yet. Nobody can certify——

. . . . . . . . . . . . . . . ''

The record before us contains many pages of questions and answers, interruptions, and statements of similar nature as those set forth in the quoted portions of the transcript and that which is set forth herein serves to illustrate the conduct of the trial of the instant action.

■ The documents referred to as depositions, not having been signed by the witness, were not admissible in evidence as depositions. (*Thomas* v. *Black,* 84 Cal. 221, 226 [23 P. 1037].) However, the use of statements made by the witness under the circumstances shown was permissible for the purpose of cross-examination. (Code Civ. Proc., § 2052.)

■ In reviewing the proceedings before us, the judgment is to be strictly construed in favor of the accused and no intendments or presumptions can be indulged against him. (*Bennett* v. *Superior Court,* 73 Cal.App.2d 203, 224 [166 P.2d 318].) There is also the presumption "that a person is innocent of crime or wrong." (Code Civ. Proc., § 1963, subd. 1.)

"Contempt of court is a specific criminal offense." (*Hotaling* v. *Superior Court,* 191 Cal. 501, 504 [217 P. 73, 29 A.L.R. 127].) Unless the record before us, reviewed in the light of the foregoing rules, shows affirmatively upon its face the existence of all the necessary facts upon which jurisdiction depended, the order must be annulled. (*Bennett* v. *Superior Court, supra,* 211.)

■ As was said in *In re Lake,* 65 Cal.App. 420, 426 [224 P. 126]:

"There is no deviation from the rule that unless the affidavit charging constructive contempt 'contains a statement of facts which shows on its face that a contempt has been committed, the court is without jurisdiction to proceed in the matter, and any judgment of contempt thereon is void.' (5 Cal.Jur.,

pp. 938, 989.) There is the same unanimity of opinion supporting the rule that in cases of direct contempt the order of commitment is void 'unless it shows on its face acts sufficient to constitute a legal contempt. The order must contain a statement of facts equivalent to those which the law says must be incorporated in an affidavit for constructive contempt; and such facts must prove the contempt. Mere conclusions are not sufficient.' (5 Cal.Jur., pp. 950, 951.)''

In *In re Shortridge*, 5 Cal.App. 371, 375 [90 P. 478], quoting from *Batchelder* v. *Moore*, 42 Cal. 412, 415, the court said:

'' 'The power of the court to punish for an alleged contempt of its authority, though undoubted, is in its nature arbitrary, and its exercise is not to be upheld except under the circumstances and in the manner prescribed by law. It is essential to the validity of proceedings in contempt, subjecting a party to fine and imprisonment, that they show a case in point of jurisdiction within the provisions of the law by which such proceedings are authorized, for mere presumptions and intendments are not to be indulged in their support.' ''

 The first specification of alleged contemptuous conduct, according to the order, is that there were constant and repeated interruptions by the petitioner of his adversary in the examination of witnesses and in making statements to the court. However, interruptions of opposing counsel are not always improper.

As was said in *In re Shortridge, supra,* 377:

''Every interruption of the proceedings of the court is not a contempt, nor unlawful, nor necessarily improper. Many interruptions are lawful and proper. Every time an attorney in the performance of his duty objects to a question asked a witness, or objects to any other proceeding in the action, he may be said to interrupt the proceedings. The particular circumstances of the interruption—the concrete facts constituting the interruption—must be set forth in order that the commitment shall show upon its face and without the aid of presumptions that the accused has been guilty of a contempt.''

In *Gallagher* v. *Municipal Court*, 31 Cal.2d 784, at page 791 [192 P.2d 905], the court, quoting from *Platnauer* v. *Superior Court*, 32 Cal.App. 463, 475 [163 P. 237], stated the following rule as applicable to an attorney:

'' 'If, in discharging his duty, he happens to be persistent or vehement or both in the presentation of his points, he is still, nevertheless, within his legitimate rights as an attorney,

so long as his language is not offensive or in contravention of the common rules of decorum and propriety. As well may be expected in forensic polemics, he cannot always be right, and may wholly be wrong in his position upon the legal question under argument, and to the mind of the court so plainly wrong that the latter may conceive that it requires no enlightenment from the argument of counsel. But, whether right or wrong, he has the right to an opportunity to present his theory of the case on any occasion where the exigency of the pending point in his judgment requires or justifies it.' "

It was further stated at page 796:

"An attorney has the duty to protect the interests of his client. He has a right to press legitimate argument and to protest an erroneous ruling."

This court said in *Bennett* v. *Superior Court, supra,* 218:

"We know of no rule of law permitting a court to punish an attorney because he is honestly mistaken in his interpretation of the law when he presents his mistaken views to the court in a proper and respectful manner."

In this connection, it should be observed that there is no claim that the questioning of witnesses by the petitioner or his remarks to the court were in any instance of a disorderly, contemptuous or insolent character. There is no question raised as to the tone, look or the manner and emphasis placed upon petitioner's remarks, as in *In re Hallinan,* 126 Cal.App. 121 [14 P.2d 797] and *Rose* v. *Superior Court,* 140 Cal.App. 418 [35 P.2d 605].

The record before us indicates that petitioner's tones were unmarked by excitement or anger. His conduct was apparently respectful and courteous toward both the court and opposing counsel, and even, at times, apologetic.

We conclude from a careful examination of the entire record in this case that while there was no doubt an appreciable prolongation of the trial by interruptions, statements of counsel and the court, the conduct of the petitioner did not amount to a contempt within the meaning of the rules set forth in the preceding decisions.

The order is annulled.

Griffin, Acting P. J., concurred.