[Civ. No. 22062. Second Dist., Div. Three. June 12, 1957.]

EDNA S. VOORHEIS et al., Respondents, v. HAW-THORNE-MICHAELS COMPANY et al., Appellants.

690

Schell, Delamer & Loring and Lee A. Solomon for Appellants.

David Sokol and Arthur M. Reilly for Respondents.

VALLÉE, J.—Plaintiffs, the widow and children of Donald C. Voorheis, brought this action for his alleged wrongful death. The accident occurred on August 5, 1954. Voorheis was working as a grade checker for MacDonald and Kruse Construction Company in the Los Angeles River channel. Defendants were the owners of equipment being used in removing earth from the river channel. Benjamin Kirk, an employee of defendants and a truck driver of long experience, was driving a tractor and trailer, called a Euclid, carrying earth from the channel. The complaint alleged Kirk so negligently operated the Euclid that it struck Voorheis, causing his death. Kirk was not named as a defendant. Defendants denied negligence and pleaded contributory negligence.

The complaint was filed November 17, 1954. On February 21, 1955, plaintiffs took Kirk's deposition. Kirk was not at that time in the employ of defendants. The deposition was transcribed on March 24, 1955. Kirk died in October 1955. The trial began April 9, 1956. Kirk's deposition had not been read to or by him, nor had it been subscribed by him. Over defendants' objection the court permitted plaintiffs to read Kirk's unread and unsubscribed deposition in evidence.

After the parties had rested, each party moved for a directed verdict. Plaintiffs' motion was granted and the court directed the jury to render a verdict for plaintiffs against defendants for $40,000.[1] Defendants' motion was denied. The

---

[1] The court arrived at the figure $40,000 by using mortality tables.

jury returned a verdict as directed and a judgment for plaintiffs against defendants for $40,000 was entered. Defendants moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion for judgment notwithstanding the verdict was denied. The motion for a new trial was granted, limited to the issue of damages only on the ground of insufficiency of the evidence. Defendants appeal from the judgment and from the order granting a new trial on the issue of damages.

The specifications of error are: 1. The court erred in admitting the unread and unsubscribed deposition of Kirk in evidence. 2. The court erred in directing a verdict on the question of liability in favor of plaintiffs, and consequently erred in denying defendants' motion for a new trial on that question. 3. The court erred in denying defendants' motion for a directed verdict, and consequently erred in denying their motion for judgment notwithstanding the verdict.

Only two persons testified on the question of liability—Kirk, by way of the unread and unsubscribed deposition; and Raymond Dollar, a coemployee of Voorheis.

Dollar testified that for about two months he had worked on the job as an oiler on a dragline, a type of crane on caterpillar tracks with a bucket hanging from its boom. As the dragline would draw the bucket towards the machine the bucket would scoop up earth in the channel, the dirt would then be lifted and unloaded into a string of Euclids lined up on the river bed. A "Euclid" consists of a relatively small cab on a tractor and a large semitrailer coupled together in such manner that the trailer does not track, that is, follow the wheels of the tractor when the Euclid is being turned. A Euclid is about 50 feet long. Until the day of the accident, the Euclids went up the river bed, pulled up alongside the dragline, were loaded, and then proceeded up the river to the nearest ramp cut out of the side of the channel. Some time before 1 p. m. on the day of the accident, the dragline had been moved about 150 feet down the river and the method of operation changed. The Euclids went up the river bed, made a complete turn of 180 degrees, were loaded, and immediately proceeded up the nearest ramp. There were about 30 feet in which to make the swing and reach the ramp.

The afternoon shift started at 1:30 p. m. About an hour later Dollar saw Voorheis' body lying between the place where the Euclids were loaded and the ramp, about 40 feet from

him. Just a few seconds before he saw the body, a Euclid had been loaded bearing "No. 2." The Euclid driven by Kirk had "No. 2" on it. Dollar was "spotting" the Euclids at the time; that is, stopping them in the correct position to be loaded. He had spotted Euclid No. 2, and after it was loaded he saw it start up and leave. He then turned his back and watched the next Euclid pull into position. The Euclids were coming in an almost continuous procession, as fast as one left another was loaded. He did not see Euclid No. 2 hit Voorheis. He did not recall seeing Voorheis on August 5 before the accident.

Dollar further testified Voorheis was with him on the job every day and was working around the Euclids all the time he was there. He stated that a grade checker establishes and measures the grade. As a grade checker, Voorheis had set stakes down in the cut of the river that was made or to be made by the dragline. Occasionally the banks of the river had to be graded and Voorheis had set stakes on the upper surface. From time to time he had placed stakes around the Euclids.

The substance of Kirk's testimony, by way of the unread and unsubscribed deposition, was that when he started to pull out after his Euclid had been loaded he saw Voorheis standing about 4 or 6 feet from the right hand of his cab. He waved at Voorheis and Voorheis waved back. When he made the turn up the ramp he did not notice whether he had struck something; he never felt anything. He knew that the trailer part of the Euclid did not track. On his return trip to the river bed, about an hour later, detectives told him that he had hit a man. He remembered pulling out of the river bed about 2:30.

As stated, the first specification of error is that the court erred in admitting the unread and unsubscribed deposition of Kirk in evidence.

The term "deposition" is now confined in meaning to testimony delivered in writing; testimony which in legal contemplation does not exist apart from a writing made or adopted by the witness. In practice the witness usually does not write out the statements but testifies before a commissioner authorized by the court to receive and transmit it and to act as the transcriber of the oral utterance. Since it is an intermediary who makes the writing which becomes the testimony, it is specially necessary to be certain that this writing shall represent precisely the statements for which the witness stands

responsible. Professor Wigmore gives three elements which may be source of error and must be guarded by special rules; they are: the personality of the official writer, the verbal accuracy of his transcription of the witness' utterance, and the witness' deliberate and knowing indorsement of the transcription as completed. (III Wigmore on Evidence, 211, § 802.) Because the writing is to stand as the witness' own words and there is always an inherent possibility of error in the transcription, a final opportunity for correction of the writing as completed should be given by the reading to or by the witness. The witness' signature may be regarded either as necessary to constitute the writing his by adoption, or as symbolically equivalent to a knowing assent to its tenor, or as an additional means of identifying the person of the witness. Wigmore states that whatever the legal theory it is usually treated as a requirement indispensable under the statutes. (*Id.*, 217, § 805.) He continues by saying that if the writing is not read and signed it does not become the testimony of the witness.

Section 2022 of the Code of Civil Procedure reads: "A deposition taken and returned, as provided in this chapter [chapter 3], may . . . be read in evidence. . . ." Section 2006 which provides the method of taking depositions, and section 2032 which provides for the manner in which depositions must be prepared, are found in chapter 3 and say that after the deposition is completed it *must* be carefully read to or by the witness, and it *"must* then be subscribed by the witness." (Italics supplied.) Section 2032 ends with the provision: "The deposition thus taken may be also read in case of the death of the witness." ▉ The verb "must" is used in sections 2006 and 2032 in stating the procedure to be followed. It is mandatory. (*Board of Supervisors* v. *Simpson*, 36 Cal.2d 671, 676 [227 P.2d 14]; *People* v. *Gotto*, 138 Cal. App.2d 165, 168 [291 P.2d 41].) ▉ The only authority for the use of depositions in civil cases lies in the provisions of the Code of Civil Procedure (*Bank of Orland* v. *Finnell*, 133 Cal. 475, 477 [65 P. 976])., and unless a deposition is taken in the manner prescribed it may not be admitted in evidence. (15 Cal.Jur.2d 681, § 6.)

In the early case of *Thomas* v. *Black*, 84 Cal. 221 [23 P. 1037], two witnesses testified in court at the time of the granting of a continuance. The testimony was taken down by a shorthand reporter in the presence of the court but was not read to the witnesses, or corrected or subscribed by them, nor was it certified by the reporter or by any other person.

It was held that the transcript lacked the essential elements of a deposition and therefore was inadmissible on the trial. The court said: "The jury before whom the case was afterward tried did not see the witnesses, and could have no assurance that the document presented contained a true statement of their testimony." *Bennett* v. *Superior Court,* 99 Cal.App. 2d 585 [222 P.2d 276], held that certain documents not having been signed by the witness were inadmissible in evidence as depositions. The rule that depositions must be taken in rigid conformity with section 2032 was followed in *Beckman* v. *Waters,* 161 Cal. 581 [119 P. 922]. In that case the clause that a deposition "must be . . . 'certified by the judge or officer taking it' " was strictly construed. The court held that a sealed but unsigned certificate did not comply with the requirement and therefore the deposition was not admissible in evidence.

█ It was error to admit Kirk's unread and unsubscribed deposition in evidence.

█ Plaintiffs contend defendants should be estopped from relying on their objection to reception of Kirk's deposition. They argue that defendants' counsel had the completed deposition in their possession for six months and should have obtained Kirk's signature. They do not argue that defendants' counsel sought to suppress the testimony, only that they should have been more active in securing Kirk's subscription. The reporter delivered the deposition to counsel for defendants after it was transcribed. The record shows that counsel for defendants exerted all reasonable efforts to locate Kirk after they received the deposition from the reporter. Kirk was not a party to the action. Counsel for defendants had no control over him. Plaintiffs overlook the fact that the deposition was taken by them as part of their evidence and that they had the burden to get Kirk to read and subscribe it. Plaintiffs' negligence cannot be shifted to the shoulders of defendants' counsel. █ As said by Mr. Justice Dooling in *Gunner* v. *Van Ness Garage,* 150 Cal.App.2d 345 (p. 347 [310 P.2d 32]):

"Certain principles in this field of the law are well settled: 1. That the burden is at all times on the plaintiff to use diligence at every step of the proceeding to expedite his case to final determination, and no affirmative duty to do more than meet the plaintiff step by step is cast on the defendant. (*Oberkotter* v. *Spreckels,* 64 Cal.App. 470, 473 [221 P. 698]; *Steinbauer* v. *Bondesen,* 125 Cal.App. 419, 426-427 [14 P.2d

106] ; *Continental Pac. Lines* v. *Superior Court,* 142 Cal.App. 2d 744, 753 [299 P.2d 417].)''

Defendants urge that the court erred in directing a verdict in favor of plaintiffs on the question of liability. Since the deposition of Kirk was improperly admitted in evidence this question must be decided by eliminating his testimony from consideration. Dollar's testimony is therefore the only evidence on the question of liability.

■ A directed verdict may be granted only when, disregarding conflicting evidence and indulging in every legitimate inference which may be drawn from the evidence in favor of the party against whom the verdict is directed, it can be said there is no evidence of sufficient substantiality to support a verdict in favor of such party if such a verdict were rendered. (*Estate of Flood,* 217 Cal. 763, 768 [21 P.2d 579].) ''The power of the court in passing upon such a motion is strictly limited. It has no power to weigh the evidence, but must view it in the light most favorable to the party against whom the direction is asked and accept every inference and presumption in his favor that may legitimately be drawn therefrom, and the motion can be granted only when, on such a consideration of the evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of that party if one were given.'' (*Kataoka* v. *May Dept. Stores Co.,* 60 Cal.App.2d 177, 181 [140 P.2d 467] ; *Crosat* v. *Paige,* 147 Cal.App.2d 385, 386 [305 P.2d 121].)

A directed verdict in favor of plaintiffs was proper only : (a) if the testimony of Dollar permitted but one reasonable conclusion, i. e., that Kirk was negligent as a matter of law; and (b) if his testimony compelled the conclusion that Voorheis was, as a matter of law, free from negligence.

The evidence was not such that it can be said Kirk was negligent as a matter of law. ■ Since he died before the trial it is to be presumed that at the time in question he exercised ordinary care in driving the Euclid. (*Tarasco* v. *Moyers,* 81 Cal.App.2d 804, 808 [185 P.2d 86] ; *Pacific Tel. & Tel. Co.* v. *Wellman,* 98 Cal.App.2d 151, 156-157 [219 P.2d 506].) The presumption is available to defendants, Kirk's employers. (*Tarasco* v. *Moyers, supra; Wells Truckways, Ltd.* v. *Cebrian,* 122 Cal.App.2d 666, 679 [265 P.2d 557].) The presumption is of course rebuttable. (Code Civ. Proc., § 1963, subd. 4.) The presumption is evidence and is sufficient to create a conflict with the testimony produced at the trial. (Code Civ. Proc., § 1957 ; *Pacific Tel. & Tel. Co.* v. *Wellman,*

98 Cal.App.2d 151, 156 [219 P.2d 506].)　　■　　Whether the testimony of Dollar and the reasonable inferences to be drawn therefrom overcame the presumption of due care on the part of Kirk was a question for the jury. (*Scott* v. *Burke,* 39 Cal. 2d 388, 397-398 [247 P.2d 313]; *Duvall* v. *T.W.A.,* 98 Cal. App.2d 106, 110-111 [219 P.2d 463].)

It is presumed also that Voorheis exercised due care at the time in question. (*Gigliotti* v. *Nunes,* 45 Cal.2d 85, 93 [286 P.2d 809]; *Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729, 737 [306 P.2d 432].)　　■　　But the presumption of due care which exists in favor of Voorheis did not carry with it a presumption of negligence on the part of Kirk. (*Gigliotti* v. *Nunes, supra,* 93-94; *Hubbert* v. *Aztec Brewing Co.,* 26 Cal.App.2d 664, 683 [80 P.2d 185, 1016].)

There is evidence from which the jury could have concluded that Kirk was not negligent.　　■　　The presumption that he exercised due care is in itself evidence he was not negligent. Aside from the presumption, there is evidence from which the jury could have inferred he was not negligent.

There was no direct evidence as to how Voorheis came to his death. If he was struck by the Euclid, no one saw it. There was no evidence as to how far the wheels of the trailer would go beyond the track of the wheels of the tractor when the Euclid was turning. Nor was there any evidence that Voorheis was standing within the arc of the turn of the Euclid when Kirk started up the ramp. The jury was not compelled to infer that the Euclid crossed the path of Voorheis. There was no testimony that there were any marks on the Euclid; and there was no testimony as to the condition of Voorheis' body—as to whether it bore the mark of being struck, run over, or some other bodily mark from which the jury might have drawn inferences as to how the body and the truck came together, if in fact they did. The Euclid followed the tracks of the trucks ahead of it. Kirk could assume that fellow workers were aware of that pattern and that they would not get into its path.

On the entire evidence the question of contributory negligence was one of fact for the jury.　　■　　We cannot say as a matter of law that Kirk was not negligent or that Voorheis was free from negligence. These questions should have been submitted to the jury. It is obvious the court erred in granting plaintiffs' motion for a directed verdict.

Defendants contend their motion for a directed verdict

should have been granted. The rules governing the determination of a motion for a judgment notwithstanding a verdict are the same as those applicable to a motion for a directed verdict. (*Jaehne* v. *Pacific Tel. & Tel. Co.*, 105 Cal. App.2d 683, 685 [234 P.2d 165].) There was evidence from which the jury could have found that Kirk was negligent. The jury could have inferred that when Kirk made the turn up the ramp he knew Voorheis was in a perilous position and that Voorheis did not realize it. Kirk had been driving Euclids and knew the trailer did not track. Although Voorheis had been setting stakes around where the Euclids loaded on straight and level ground, the jury could have inferred that he did not know how they acted on turns and grades. It was only a matter of seconds after Kirk's Euclid was loaded and left that Voorheis' body was found in the path where the Euclids traveled. The court did not err in denying defendants' motion for judgment notwithstanding the verdict.

The order granting a new trial limited to the issue of damages and the judgment are reversed. The cause is remanded for a new trial on all issues.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied July 2, 1957, and respondents' petition for a hearing by the Supreme Court was denied August 6, 1957. Gibson, C. J., and Carter, J., were of the opinion that the petition should be granted.