[Crim. No. 3460.    Third Dist.    Feb. 14, 1964.]

THE PEOPLE, Plaintiff and Appellant, v. HAROLD L. HJELM, Defendant and Respondent.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, R. M. Momboisse and John Giordano, Deputy Attorneys General, for Plaintiff and Appellant.

Lui, Lally, Martin & Luce, Lally & Martin and Thomas W. Martin for Defendant and Respondent.

SPARKS, J., pro tem.*—The grand jury of Sacramento County found and presented an indictment charging defendant-respondent Hjelm with having committed three counts of perjury and one of forgery. Defendant moved to set aside the indictment under Penal Code section 995. The motion was granted, and the state now appeals under Penal Code section 1238, subdivision 1 from the dismissal of count 2, perjury. It is conceded by the state that counts 1, 3 and 4 were properly dismissed.

The charge of perjury was based upon allegedly false answers given by defendant in the taking of a deposition upon oral interrogatories in a civil action. The evidence before the grand jury disclosed that the deposition had not been signed by defendant, and that he had not been given the opportunity to read and make any desired changes therein prior to its delivery by the transcriber for filing with the county clerk. The pertinent portion of the indictment under question charged that the defendant, after being sworn to testify truthfully in the taking of a deposition before a notary public at San Jose, California, on the 23rd day of October 1962, wilfully and knowingly swore falsely to certain statements material to the issues of a civil action pending in the Superior Court of Sacramento County. It was then alleged in said indictment: "... that said deposition was filed on the 30th day of October 1962, pursuant to law in the Superior Court of the County of Sacramento, State of California." The indictment did not allege that the deposition had been completed by the defendant by delivery with the intent to utter or publish the same as true.

When a perjury is claimed to have been committed in a written document such as an affidavit or a deposition, it is requisite to allege and to prove that the document had been

---

*Assigned by Chairman of Judicial Council.

completed. Completion is defined by statute to be delivery by the defendant to some other person, with the intent that it be uttered or published as true.[1]

The omission of such allegation renders the accusatory pleading defectively incomplete, and insufficient as a matter of law, to state a public offense. (*People* v. *Robles*, 117 Cal. 681 [49 P. 1042]; *People* v. *Teixeira*, 59 Cal.App. 598 [211 P. 470].) In *Robles*, the court, after quoting the language of Penal Code section 124, stated at pages 683-684:

"... The word 'deposition' here used includes 'affidavit.' In effect this section declares that an affidavit will not support a charge of perjury until it has been delivered by the accused with the intent to be uttered as true. ...

"The indictment cannot stand the test when tried by the principle of law here declared. *It does not charge facts sufficient to constitute the offense. ... Here, the indictment only charges the making of the false affidavit; it does not charge enough. It should have declared that the affidavit was delivered with the intent that it be uttered and published as true. Such a statement in the pleading is just as necessary as to charge that the affidavit was made by the accused, or that it was false; if it were possible, more necessary, for while the affidavit remains in the hands of the accused no mischief is done.*" (Italics added.)

This early holding of the Supreme Court has survived the years unscathed. The decision in *People* v. *John*, 137 Cal. 220 [69 P. 1063], cited by the Attorney General, cannot be deemed a deviation. In *John*, the alleged perjurious document was a complaint which was the basis of a criminal prosecution. It was in the custody of the magistrate, whose duty it was at once to issue a warrant of arrest. The affidavit was completed, and delivery consummated upon signing, and the document went out of defendant's control. *John* did not overrule *Robles*. In fact, the court itself said: "*People* v. *Robles* [citation] has no application." (*People* v. *John*, *supra*, p. 221; see, also on point, *People* v. *Teixeira*, *supra*, p. 603.)

If the failure to allege completion of the deposition by delivery with the requisite intent constituted only a defect in

---

[1] The language of Penal Code section 124 is as follows:

"The making of a deposition, affidavit or certificate is deemed to be complete, within the provisions of this chapter, from the time when it is delivered by the accused to any other person, with the intent that it be uttered or published as true."

pleading, it could, of course, be remedied by amendment. In such event the motion to set aside the indictment properly could have been denied, and the matter raised by demurrer. (Pen. Code, §§ 997, 1003, 1004.) It becomes necessary, therefore, to review the proceedings before the grand jury in order to ascertain what evidence, if any, was in the record concerning the completion of the deposition by defendant, and the effect of certain stipulations made at the taking of the deposition. This is particularly necessary for the reason that, in granting the motion to dismiss, the trial judge stated, upon inquiry from the district attorney, that in light of the evidence that the defendant never had an opportunity to read or correct the deposition before it was filed he would dismiss any indictment brought on the perjury charge, even if it were amended to allege the delivery of the deposition.

█ In making this review we are mindful of the test of probable or reasonable cause as applied to the evidence sufficient to support an indictment or an information, and which was binding upon the trial court.[2] When the proof falls below this standard and fails to show the commission of a public offense it cannot be upheld by resort to mere speculation as to events dehors the record. Pen. Code, § 871; *People v. Schuber*, 71 Cal.App.2d 773 [163 P.2d 498]; *Greenberg v. Superior Court*, 19 Cal.2d 319 [121 P.2d 713]; *Ex parte Vice*, 5 Cal.App. 153 [89 P. 983]; *In re Servaes*, 20 Cal.App. 2d 222 [66 P.2d 759].) █ Testing the trial judge's decision in the light of these principles, we note that the deposition was taken in San Jose, Santa Clara County, California, before Stanley P. Freeman, Jr., a certified shorthand reporter and a notary public. He testified before the grand jury, in part, as follows:

"Q. And I am going to show you an Exhibit marked People's Exhibit Number 3 and ask you to examine that,

---

[2]It has been reiterated in numerous cases that a reviewing court is not permitted to substitute its judgment for that of a committing magistrate or grand jury; nor to weigh the evidence or resolve conflicts therein. Favorable evidence and every legitimate inference that can be drawn therefrom must be accepted in favor of the challenged decision or order under review. Reasonable or probable cause is shown if a person of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (*People v. Jablon*, 153 Cal.App.2d 456, 458 [314 P.2d 824]; *People v. Nagle*, 25 Cal.2d 216, 222 [153 P.2d 344]; *Lorenson v. Superior Court*, 35 Cal.2d 49, 56-57 [216 P.2d 859]; *Bompensiero v. Superior Court*, 44 Cal.2d 178 [281 P.2d 250].)

please, and tell me if you recognize that? A. Yes, I do. Q. Now, what is that? A. This is the original transcript of a deposition that I reported of Harold L. Hjelm. ... Q. ... And prior to questions being asked and answers given were there usual stipulations entered into by the attorneys present? A. Yes sir. Q. And do you have a page of the stipulations on that deposition? A. Yes sir. Q. I am going to ask you to read the third paragraph, if you would. A. (Reading) : 'It is further stipulated that said deposition may be used with the same full force and effect if not signed as though it were signed assuming the witness has had reasonable opportunity to read and sign said deposition.' Q. And after taking the deposition were you contacted by Mr. Hjelm or his attorney regarding any changes in this deposition? A. No sir. Q. And, incidentally, I believe this deposition speaks for itself that it was not signed by Mr. Hjelm after it was taken. I will let you examine it. A. No sir, it was not. Q. And pursuant to that stipulation and not having heard anything from Mr. Hjelm, did you have an occasion to have this then filed? A. Yes sir. Q. Were copies of this deposition made?. A. Yes sir. Q. And they were furnished to whom? A. One copy to Mr. Feldman who was the attorney for the plaintiff, and one copy to Mr. Lui, who was the attorney for General Hjelm.''

It is not contended by the state that there was any evidence before the grand jury that the defendant had been afforded an opportunity to read the deposition or to make any changes therein *prior* to its having been filed. The record negates any legitimate inference that such was the case, since the deposition was filed in Sacramento on the day following its completion, and a copy mailed to defendant's attorney. The record is barren also as to any use of the deposition in the civil case, and it must be assumed that it reposed in its original condition in the files of the county clerk.

Was the trial judge incorrect in his conclusion that the stipulations of counsel did not constitute a waiver of defendant's right to read and make any desired changes in the deposition before it could be deemed completed within the meaning of Penal Code section 124?

█ In answering this question, we turn our attention to the nature of a deposition. It is one of the three modes provided by statute by which the testimony of a witness may be taken.[3] By definition it is a *written* declaration, under oath,

---

[3]Code of Civil Procedure section 2002 provides:

''The testimony of witnesses is taken in three modes: (1) By affidavit; (2) By deposition; (3) By oral examination.''

made upon notice to the adverse party, for the purpose of enabling him to attend and cross-examine. (Code Civ. Proc., § 2004.) As stated in the case of *Voorheis* v. *Hawthorne-Michaels Co.*, 151 Cal.App.2d 688, p. 692 [312 P.2d 51]: "The term 'deposition' is now confined in meaning to testimony delivered in writing; testimony which in legal contemplation does not exist apart from a writing made or adopted by the witness." It differs from an oral examination in that the latter is an examination in the presence of the jury or tribunal which is to decide the fact or act upon it, the testimony being heard by the jury or tribunal from the lips of the witness. (Code Civ. Proc., § 2005.) A deposition is more closely akin to an affidavit, both being *written* declarations under oath. In fact, the only fundamental distinction between the two is that the affidavit is made without notice to the opposite party and without right of cross-examination. (Code Civ. Proc., § 2003.) The deposition may be taken upon either written or oral interrogatories. Under the latter method, the deposition is prepared by the officer taking it, or someone under his direction. Section 2019, subdivisions (e) and (f)(1) and (3), Code of Civil Procedure, provide:

"(e) When the testimony is fully transcribed, the deposition shall be submitted to the witness for examination and shall be read to or by him, unless such examination and reading are waived by the witness and by the parties. Any changes in form or substance which the witness desires to make shall be entered upon the deposition. The deposition shall then be signed by the witness, unless the parties by stipulation waive the signing or the witness is ill or cannot be found or refuses to sign. If the deposition is not signed by the witness, the officer shall sign it and state on the record the fact of the waiver. . . .

"(f) (1) The officer shall certify on the deposition that the witness was duly sworn by him and that the deposition is a true record of the testimony given by the witness. He shall then securely seal the deposition in an envelope endorsed with the title of the action and marked 'Deposition of (here insert name of witness)' and shall promptly file it with the court in which the action is pending or send it by registered mail to the clerk thereof for filing.

". . . . . . . . . . . . .

"(3) The party taking the deposition shall give prompt notice of its filing to all other parties."

It is the state's theory of the case that, notwithstanding

the lack of any evidence that the defendant had in fact ever read or even seen the deposition after its transcription, he had in fact waived that right or that reasonable inferences of such. waiver could be drawn. This is predicated upon the testimony of the court reporter that he had mailed a copy of the deposition to defendant's attorney and that no request had been made for correcting the deposition.

It is further contended that there was a waiver as a matter of law by virtue of the provisions of subdivision (d) of section 2021 of the Code of Civil Procedure.[4]

■ According to this argument, unless corrections or changes had been called to the attention of the court reporter within a reasonable time after the copy of the deposition had been mailed to defendant's attorney, they would be deemed waived by the defendant. This in effect would mean that if the attorney, through oversight, neglect, reliance on a stipulation, or for any other reason, justified or unjustified, failed to cause his client to read the copy of the deposition within a reasonable time after its taking, the right of change or of correction would have been lost, and a charge of perjury ripen.

This contention cannot be upheld for several reasons. The stipulation entered into at the time of the taking of the deposition specifically reserved to defendant the right of reading the deposition before *use* of the same. It cannot be inferred reasonably that the effect of this stipulation was to fix any time limit in which the defendant might read and change the deposition, providing that the same be done prior to the use of the writing. Further, the original deposition had been filed in Sacramento on the day following its completion in San Jose. The manner in which it was transmitted to Sacramento does not appear from the record, but it seems probable that the notary caused it to be mailed from San Jose, at the same time that he deposited the copy in the mail to defendant's counsel. In any event, there could be no reasonable inference that the deposition was completed by defendant at that time within the meaning of Penal Code section 124.

---

[4]Subdivision (d) of section 2021, Code of Civil Procedure, reads:

''Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, indorsed, transmitted, filed, or otherwise dealt with by the officer under Sections 2019 and 2020 of this code are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained.''

It is contended by the state, however, that it is settled practice in California that a deposition is not, after transcription, presented to the deponent for signature; rather, that copies are served upon counsel for the parties, and that counsel for the deponent has the responsibility to make his copy available to the deponent, and the latter's objections, if any, are brought to the attention of the notary who will then take steps to settle the transcript before or after filing the original. It is urged that this practice is so common and established as to be judicially known to the courts. ▮ Although "common knowledge" which courts may judicially notice includes knowledge of the bench and bar (Witkin, Cal. Evidence, § 51, p. 66; *Estate of Loud,* 70 Cal.App.2d 399, 403 [161 P.2d 49]; *Heller* v. *Heller,* 88 Cal.App.2d 603, 607 [199 P.2d 44]; *People* v. *Adamson,* 34 Cal.2d 320, 333 [210 P.2d 13]), the practices noted must be certain and indisputable. (*City of Oakland* v. *Darbee,* 102 Cal.App.2d 493, 501 [227 P.2d 909]; *People* v. *Tossetti,* 107 Cal.App. 7 [289 P. 881]; *Communist Party* v. *Peek,* 20 Cal.2d 536, 546 [127 P.2d 889]; *Berry* v. *Chaplin,* 74 Cal.App.2d 669, 675 [169 P.2d 453].) ▮ In our own experience, when deviations from the procedures outlined by the statutes for the taking of depositions have occurred, there have been a variety of methods followed, depending upon the custom and practice in the particular locality of the court reporter and of the attorneys. In this respect, our observations coincide exactly with those of Mr. Justice Peters when he says, as he did in the case of *Coy* v. *Superior Court,* 58 Cal.2d 210, 219 [23 Cal.Rptr. 393, 373 P.2d 457], referring to depositions: "Frequently, it is the practice to waive reading and signing until the time (at trial) that one party or the other decides to introduce, or otherwise use, the deposition." We are constrained to the view that such attempt to remedy the deficiency in the evidence by resort to alleged practices of attorneys will not suffice to show, by any reasonable inference, that the deposition in the instant case had been completed.

The court was not presented here with the problem, as in a civil case, whether or not a deposition could be used, or a motion to correct or suppress it granted, but rather with a criminal charge in which a specific intent was an integral part. However, even in civil cases the right of a witness to read and correct a deposition before it may be admitted into evidence has been affirmed by California courts. (*Noah* v. *Black & White Cab Co.,* 138 Cal.App. 236, 238-239 [32 P.2d

437]; *Bennett* v. *Superior Court,* 99 Cal.App.2d 585 [222 P.2d 276]; *Voorheis* v. *Hawthorne-Michaels Co., supra,* 151 Cal.App.2d 688; *Thomas* v. *Black,* 84 Cal. 221 [23 P. 1037].)

We are aware that the deposition process is now used widely for pretrial discovery as well as for testimonial purposes. The increased latitude of its function as a discovery mechanism does not, in our opinion, militate against the requirements of Penal Code section 124, relating to its completion for testimonial use. The distinction between the two types of use is well described by Professor David W. Louisell in Modern California Discovery, as follows at page 90: "It has often been noted that the genius of the modern deposition-discovery mechanism lies largely in the clear cut distinction between the right to take depositions, on the one hand, and the right to use the depositions on the other. This distinction makes possible the utmost liberality in taking depositions, because of the restrictions imposed on their use. To discover is one thing; to use discovered information at the trial is a wholly different matter."

It is clear that a witness or a party may be interrogated orally for discovery purposes through the deposition process, and the writing thereafter never completed, nor used thereafter for testimonial purposes. The case of *Coy* v. *Superior Court, supra,* 58 Cal.2d 210, admirably points out the distinction between answers given to written interrogatories and the inchoate and undetermined character of verbal answers in an incompleted deposition. In that case objection had been made to the request for a reply to an interrogatory to an adverse witness under section 2030 of the Code of Civil Procedure because the same question had been answered in a previous deposition. The court stated at pages 218-219: "... A deposition is not final until read, signed and filed. Until that time it may be corrected and answers changed.... Certainly an answer in a deposition remains undetermined, or uncertain, until such time as the document is signed. As such it may be valuable as a matter of pretrial discovery. But it does not adequately serve the same purpose as an interrogatory. The function of the latter is twofold. It not only ferrets out relevant information which may lead to other admissible evidence, but it immediately and conclusively binds the answering party to the facts set forth in his reply. It follows that, since the two procedures do not have the same effect (even when they contain the same or similar questions and answers), the objection that an interrogatory has been previously

answered in a deposition (not shown to have been corrected or signed), standing alone, will not suffice as an excuse for refusing to reply to that interrogatory.''

These rules applicable to civil cases serve to emphasize the necessity of showing a completed deposition ready for testimonial use before any statements therein can be charged as perjurious. Completion denotes delivery of the writing in final form with the specific intent of the deponent to publish and utter the same as true. A search of the record here discloses no evidence from which reasonably it could be inferred or suspected that the deposition in question was delivered by the defendant in final form and that the right to read and make revisions in it before use had been waived.

We conclude the trial court's determination that the evidence before the grand jury was insufficient to show such completion, and that there was therefore a failure to establish reasonable or probable cause, was a correct decision and substantially supported.

A further point raised by respondent, in support of the judgment of dismissal, concerned the qualifications of the notary public who administered the oath at the deposition. We conclude that this latter contention is without merit.

The judgment is affirmed.

Pierce, P. J., and Friedman, J., concurred.